938 A.2d 310

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ricardo NATIVIDAD, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 5, 2007.

Decided Dec. 27, 2007.

190

192

194

198

202

Jules Epstein, Kairys, Rudovsky, Messing & Feinberg, Philadelphia, for Ricardo Natividad, appellant.

Amy Zapp, Harrisburg, Hugh J. Burns, Philadelphia Dist. Attorney's Office, for the Com. of PA, appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

*OPINION*

Justice FITZGERALD.

In this capital case, Ricardo Natividad (Appellant) appeals from the order of the Philadelphia County Court of Common Pleas (PCRA Court), which denied his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. We affirm.

At 2:00 a.m. on November 9, 1996, Michael Havens was preparing to unlock his car, a dark blue Lincoln, when two men, one of whom Mr. Havens later identified as Appellant, approached him. Appellant faced Mr. Havens while pointing a stainless steel revolver at him, as his cohort approached him from behind. Mr. Havens surrendered his wallet and keys to Appellant, who then ordered Mr. Havens into the car and threatened to kill him when Mr. Havens initially hesitated. Mr. Havens sat in the backseat, and Appellant sat in the front seat, facing and pointing his gun at Mr. Havens while Appellant's cohort drove. Appellant repeatedly demanded cash from Mr. Havens, and when he found the cash Mr. Havens had on hand unsatisfactory, he threatened to shoot Mr. Havens unless he withdrew more cash from an automatic teller machine. Mr. Havens, however, convinced Appellant that he had no available cash in his bank account, so Appellant and his cohort abandoned him on the side of a road and drove off.

At 7:00 p.m. that same evening, Appellant picked up his friend, Byron Price, in a blue Lincoln, which Mr. Price had never seen Appellant drive before. Appellant pulled the car into a nearby gas station and instructed Mr. Price to wait in the passenger seat. Mr. Price testified to hearing a gunshot, then seeing Appellant run back to the car with a chrome revolver in his hand. Mr. Price observed a man, later identified as Robert Campbell, lying on the ground next to a gas pump, at which point Appellant sped away from the gas station. When Mr. Price asked Appellant why he shot the man, Appellant replied, "He drew on me." *Commonwealth v. Natividad,* 565 Pa. 348, 773 A.2d 167, 172 (2001) (*Natividad I*) (Opinion Announcing Judgment of Court), *cert. denied,* 535

U.S. 1099, 122 S.Ct. 2300, 152 L.Ed.2d 1056 (2002). The Johnsons, who lived across the street from the gas station, further testified that they saw the victim raise his hands in the air and fall backward right when they heard gunshots. The Johnsons indicated that they saw the shooter run into the driver's side of a dark Lincoln while wearing a lumberjack-style jacket, although they were unable to identify Appellant specifically as the shooter.

On November 11, 1996, police recovered the charred remains of a dark blue Lincoln. They found a lumberjack-style jacket in the car, and Mr. Havens identified the car as his. He also identified the jacket as his, claiming that he had left it in his car at the time of the robbery.

Several of Appellant's acquaintances indicated that he took credit for the gas-station murder the day after the incident. In December 1996, Keith Smith gave a .357 revolver to his attorney, who immediately surrendered it to homicide detectives. Carl Harris testified that he saw Appellant approach Mr. Smith several weeks after the murder and take Mr. Smith to a private area. When Appellant left, Mr. Harris noticed Mr. Smith carrying a chrome .357–Magnum gun. Police arrested Appellant in March 1997, and Mr. Havens identified him from a photographic array. Mr. Havens also identified the .357 gun as similar to the one used to rob him of his vehicle. Tests revealed that the fatal wound to Mr. Campbell at the gas station was consistent with injuries caused by a .357 Magnum.

Appellant was tried in separate indictments for the robbery of Mr. Havens and the murder of Mr. Campbell. These indictments were consolidated for trial. On November 10, 1997, a jury convicted Appellant of first-degree murder, 18 Pa.C.S. § 2502(a), carrying a firearm on a public street, 18 Pa.C.S. § 6108, two counts of possession of an instrument of crime, 18 Pa.C.S. § 907, two counts of robbery, 18 Pa.C.S. § 3701, one count of robbery of a motor vehicle, 18 Pa.C.S. § 3702, kidnapping, 18 Pa.C.S. § 2901, and criminal conspiracy, 18 Pa.C.S. § 903. At the penalty phase of trial, the jury rendered a verdict of death after finding that the two aggrava-

ting circumstances, killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and significant history of violent felony convictions, 42 Pa.C.S. § 9711(d)(9), outweighed the sole mitigating factor, Appellant's life history, 42 Pa.C.S. § 9711(e)(8). After denying post-verdict motions, the trial court imposed a sentence of death for the first-degree murder conviction, and numerous additional sentences on the other charges to run concurrent to the sentence of death.

Trial counsel continued to represent Appellant throughout the duration of his direct appeal. On automatic direct appeal, pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h)(1), this Court affirmed in an Opinion Announcing the Judgment of the Court. *Natividad I*, at 181. Writing for the Court, then-Justice, now Chief Justice Cappy found the evidence sufficient to support the first-degree murder conviction, and rejected Appellant's guilt-phase claims that the trial court should have suppressed Mr. Havens's photographic identification of Appellant, the trial court should not have permitted Mr. Smith's attorney to testify, and the evidence was insufficient to support a robbery conviction for the gas station incident. Regarding Appellant's penalty-phase claims, Mr. Justice Cappy concluded that Pennsylvania Sentencing Code subsections 9711(a)(2) and (c)(2), which permit victim-impact statements, are constitutional pursuant to the then-recent holding in *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143 (2001) (plurality). The opinion also found that the Commonwealth gave Appellant sufficient notice of its intent to present victim-impact testimony, the trial court's penalty-phase instructions regarding aggravating factors, mitigating factors, and victim-impact evidence were proper, and the evidence was sufficient to support the aggravating factors. Mr. Justice Zappala, joined by Mr. Justice Flaherty, dissented because he found the presentation of victim-impact evidence unconstitutional. Mr. Justice Nigro filed a separate, dissenting opinion, concluding also that the presentation of victim-impact evidence was unconstitutional, but also finding that the Commonwealth failed to give adequate notice of its intent to introduce victim-impact testimony. Mr. Justice Saylor concurred in the result.

The United States Supreme Court denied Appellant's petition for writ of *certiorari* on May 28, 2002. Appellant filed a *pro se* PCRA petition on November 25, 2002. The PCRA court appointed current counsel, who subsequently filed an amended petition.[1] The PCRA court denied Appellant's guilt-phase claims, but granted an evidentiary hearing on his allegations of ineffective assistance of penalty-phase counsel.[2] After two days of hearings, the PCRA court denied Appellant's PCRA petition. This timely appeal followed.

We have jurisdiction over Appellant's petition pursuant to PCRA Section 9546(d), which mandates direct review by this Court of post-conviction appeals in death penalty cases. *See* 42 Pa.C.S. § 9546(d). We review the denial of PCRA relief for a determination of whether the PCRA court's findings are supported by the record and free of legal error. *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 97 n. 4 (2001). A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S. § 9543(a)(2).

Instantly, all of Appellant's eight primary claims allege ineffective assistance of trial counsel. *See* 42 Pa.C.S. § 9543(a)(2)(ii) (providing that petitioner is eligible for relief if he proves by preponderance of evidence that conviction or sentence was result of ineffective assistance of counsel). Normally, PCRA petitioners are required to "layer" their claims of ineffective assistance of trial counsel. *See Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, 1024 (2003). This Court decided his direct appeal approximately a year-and-a-half before filing *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002); therefore, the pre-*Grant* framework applies, in which the PCRA petitioner may challenge the assistance only of

1. Before current counsel's appointment, two previously-appointed PCRA counsel withdrew their representation.

2. The trial court docket provided to this Court does not list an order denying or dismissing Appellant's guilt-phase claims. At the beginning of the evidentiary hearing, however, the PCRA court indicated that the hearing was limited to Appellant's penalty-phase claims. *See* N.T., 10/31/05, at 4.

counsel who immediately preceded current counsel. *See Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 594–95 (2007) (assessing whether ineffectiveness claims were waived under pre-*Grant* framework when direct appeal concluded before *Grant* was filed); *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 656 (2003) (limiting court's ineffectiveness review to only that related to most recent counsel). In this case, trial counsel continued to represent Appellant on direct appeal. Therefore, we will proceed to review his claims. *See Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 523 (2001) (noting difference between PCRA allegations of ineffectiveness when one case involved different trial and appellate counsel, and other case involved trial counsel continuing representation on direct appeal).[3]

■■ It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.

---

**3.** We note that in *Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232 (2001), footnote 10 of the Opinion Announcing the Judgment of the Court observes that because of the "relaxed waiver" doctrine applicable at the time in capital-case direct appeals, trial counsel's performance on direct appeal was subject to "separate, distinct review." *See id.* at 244 n. 10 (Opinion Announcing Judgment of Court). However, this opinion was only that announcing the judgment of the Court, and this Court has acknowledged that counsel is not expected to allege his own ineffectiveness. *See, e.g., Williams*, 782 A.2d at 523; *Commonwealth v. Frankhouser*, 491 Pa. 171, 420 A.2d 396, 398 (1980) ("[I]t is ... unrealistic to expect counsel to file motions and/or an appeal challenging his own effectiveness.") (quoting *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369, 371–72 (1976)). Therefore, we decline to find Appellant's claims waived for direct-appeal counsel's failure to allege his own ineffectiveness.

23 (2000). The Commonwealth argues that Appellant's claims are not cognizable under the PCRA because he failed to argue or develop the second and third prongs of the *Pierce* test in each of his ineffectiveness claims. Appellant counters that the Commonwealth's argument is waived because it did not raise this claim with the PCRA court and that he did argue prejudice throughout the litigation of his PCRA petition. Appellant, however, fails to recognize that, as the appellant, he is challenging the PCRA court's finding that he did not satisfy his burden of proof. Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce, supra; Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039, 1044 (1999). This Court cannot grant relief on an ineffectiveness claim unless the appellant proves the PCRA court wrongly determined that he failed to satisfy all of the *Pierce* elements. *See Breakiron, supra* (noting that this Court's standard of review is limited to whether PCRA court's ruling was supported by record before it and free of legal error); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998) (observing that this Court will grant relief only if appellant satisfies each *Pierce* element) (quoting *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 35 (1998)). Thus, the Commonwealth, as the appellee, is permitted to argue on appeal that Appellant did not properly develop the second and third prongs of the *Pierce* test. *See Commonwealth v. Katze,* 540 Pa. 416, 658 A.2d 345, 349 (1995) (plurality) (finding that general rule of waiver when issue is not raised in lower court applies only to appellants).[4]

Appellant insists that, had the Commonwealth presented its waiver argument to the PCRA court, he would have been entitled to the opportunity to amend his petition pursuant to *Rush, supra.* His reliance on *Rush* is misplaced. While Pa.R.Crim.P. 909(B)(2) requires the PCRA court to issue notice of its reasons for dismissal, the PCRA court's opinion

---

4. As Appellant observes, the Commonwealth filed a motion to dismiss the petition, but did not argue in the motion his alleged failure to develop the second and third prongs. Nonetheless, Appellant is appealing from the denial of his petition; therefore, it is his burden to prove trial court error.

instantly addressed the merits of his claims and denied them.[5] Further, appellants continue to bear the burden of pleading and proving each of the *Pierce* elements on appeal to this Court. *See Commonwealth v. Jones*, 583 Pa. 130, 876 A.2d 380, 385–86 (2005) (examining whether appellant properly pleaded *Pierce* elements in appellate brief before determining whether he pleaded them in PCRA petition). Accordingly, we will examine his appellate briefs and PCRA petition on each claim to determine whether he has properly pleaded the *Pierce* elements.

In examining Appellant's arguments of ineffective assistance of trial counsel, we are limited to reviewing only those arguments raised with the PCRA court, as this Court abolished the relaxed-waiver doctrine for capital post-conviction appeals in 1998, well before Appellant filed this petition. *See Albrecht*, 720 A.2d at 700. A PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1250 (2006) (finding ineffectiveness claim insufficient when appellant "failed to set forth his claim pursuant to the three-prong *Pierce* test for establishing an ineffective assistance of counsel claim"); *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001) ("[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief."). With these standards in mind, we proceed to examine Appellant's claims of trial counsel's ineffectiveness at the guilt phase of trial.

5. We note that the PCRA court granted an evidentiary hearing on the penalty-phase claims, but not on the guilt-phase claims. Although the docket does not indicate whether the PCRA court filed an official notice of its intent to dismiss, Appellant clearly had notice of the trial court's intentions at the April 13, 2005 hearing, where the PCRA court and both parties discussed the scope of the evidentiary hearing. *See* N.T., 4/13/05, at 5–8 (discussing whether evidentiary hearing was necessary on trial claims because they were issues of record). Appellant had numerous opportunities to object to the limited nature of the evidentiary hearing, but chose not to do so and does not object now to the lack of notice.

## I. Guilt-phase Ineffective Assistance of Counsel

### A. Carjacking Evidence

Appellant alleges that trial counsel was ineffective for failing to object to the use of carjacking evidence as proof of intent to commit robbery, and failing to impeach the carjacking witness, Mr. Havens. We have examined Appellant's amended petition, his reply to the Commonwealth's motion to dismiss, and his appellate briefs thoroughly on these claims, and while he vigorously argues the merits of the underlying claims and, to a lesser extent, the prejudice allegedly incurred as a result, noticeably absent is any meaningful attempt to invoke the second *Pierce* prong, that is, whether there was any objectively reasonable basis for trial counsel's action or inaction.[6] *See Pierce, supra.* The second prong is especially pertinent to evidentiary claims, as trial counsel often must decide whether certain tactics harm his client's image to the jury, or whether the costs of introducing certain evidence outweigh its benefits. Appellant does not even make a boilerplate assertion that trial counsel had no reasonable basis for his inaction. Accordingly, we have no basis upon which to grant Appellant relief on these claims.[7] *See Spotz, supra; Bracey, supra.*

### B. Opening Door to Third–Party Threats Evidence

Next, Appellant argues that trial counsel substantially harmed his case by questioning Mr. Price, who was in

6. Although a reply brief may not introduce a new and substantially different issue from those raised in the original brief, we note that Appellant's reply brief also does not address the second *Pierce* prong, despite the Commonwealth's pointing out its omission. *See Basemore,* at 726–27 (finding appellant's claim from reply brief waived when it was not raised in PCRA court, in Pa.R.A.P. 1925(b) statement, or original brief). In fact, in each claim where we find failure to develop the *Pierce* prongs, Appellant has not attempted to plead and prove the required prong in his reply brief.

7. The PCRA court initially found that this claim was previously litigated, and that Appellant could not attempt to raise the issue under a different theory. PCRA Court Opinion at 7. Three days before the PCRA court filed its opinion, this Court filed its decision in *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564 (2005), which clarified that post-conviction ineffective assistance of counsel claims are considered a

the car with Appellant at the time of the gas station shooting, about his delay in providing a statement to police. According to Appellant, the trial court advised counsel before trial that such a question would open the door for Mr. Price to allege witness intimidation by Appellant's family, to which Mr. Price did eventually testify. Appellant's development of the *Pierce* prongs consists only of the following:

> Here, nothing whatsoever was gained by attacking Price's delay in reporting his knowledge to the police. The harm, however, was substantial, as it led to "other acts" evidence. Petitioner contends that a jury hearing that his relative was arrested for intimidating the witness against him [petitioner] in a murder case had a deleterious effect, both standing alone and in conjunction with the impermissible "other acts" evidence arising from the use of the [ ] robbery to prove intent.

Amended PCRA Petition, filed 1/20/04, at 19–20. *See also* Appellant's Brief at 30–31 ("[A]s is evidenced by the trial strategy, counsel had no strategic or tactical reason for seeking this information."). Although Appellant has arguably pleaded the second *Pierce* prong by arguing that "nothing whatsoever was gained by attacking Price's delay in reporting his knowledge to police," we cannot consider this one-sentence argument to constitute a sufficient development of his claim. *See Bracey, supra.* Moreover, we agree with the Commonwealth that Mr. Price's accusation of witness intimidation by Appellant's cousin did not prejudice Appellant's defense. Appellant consistently attempted to establish that he shot the victim at the gas station in self-defense, but the victim's gun was still snapped in its holster, and witnesses testified to seeing his hands in the air after Appellant shot him. *Natividad,* 773 A.2d at 176. Accordingly, Appellant is due no relief on this claim.

discrete legal ground, and that a direct-appeal decision on the underlying claim instead applies to an analysis of the prejudice prong of the *Pierce* ineffectiveness test. *Id.* at 573. However, because the PCRA court offered an alternative basis for denying this claim of ineffectiveness, remand for consideration of *Collins* is unnecessary.

▌

## C. Failure to Object to Prosecutor's Closing Arguments

 Appellant argues that counsel should have objected to several statements made by the prosecutor during closing arguments. He argues two specific categories of prosecutorial misconduct: (1) impermissibly attacking defense counsel's strategy; and (2) making religious arguments. However, Appellant's only argument regarding the second *Pierce* prong, and the prejudice prong as well, consisted of the following: "Finally, as trial counsel failed to object to clearly impermissible argument, with no tactical basis, petitioner was deprived of the effective assistance of counsel (and prejudiced thereby, for the reasons set forth above)." Amended PCRA Petition at 24. *See also* Appellant's Brief at 34. These boilerplate claims were clearly insufficient to establish either the reasonable-basis or the prejudice prong of the *Pierce* test. *See Bracey, supra.*

 Moreover, we find no merit to Appellant's underlying claims. Appellant challenges the following statements by the prosecutor:

*Now, is that [questioning by defense counsel] designed to get you to the truth? Or is it designed to make you forget* that he, Mr. Havens [the carjacking victim], has unambiguously consistently without any pause, without any hesitation, since the beginning, since she's [sic] had the opportunity, unsuggestively [sic] . . . said . . . this is right here the man who carjacked me, Ricardo Natividad

Is asking him about maybe he had an earring *designed to make you forget* all the other aspects of the description that he hit right on . . .

Is that question like a[sic] earlobe question and the earring question designed to get you to the truth or to make you forget . . .

Amended PCRA Petition at 21 (quoting N.T., 11/10/97, at 61–63) (emphasis added by Appellant).

 While a prosecutor may not offer his opinion as to a defendant's trial strategy, he may fairly respond to attacks on

a witness's credibility. *Commonwealth v. Williams,* 581 Pa. 57, 863 A.2d 505, 518 (2004); *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504, 516 (2002). Trial counsel devoted considerable time attacking Mr. Havens's credibility, and the prosecutor's statements responded to each of those attacks. Further, the statements challenged by Appellant were innocuous and were not obvious offers of opinion or of the type that would unavoidably prejudice the jury into forming a mindset of fixed bias and hostility toward him. *See Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294, 316 (2002) (stating that prosecutorial conduct does not occur unless comments had unavoidable effect of prejudicing jurors by forming in minds fixed bias and hostility toward defendant).

 Appellant's attack on the prosecutor's religious reference is equally without merit. At issue is the following statement:

My best friend who had this case for the preliminary hearing, we talked about a lot of different things and, you know, it's not as the Judge has told you to decide this case on sympathy or certainly no sympathy for Ricardo Natividad but not even for the Campbell family. *Not because there is a God who would when we're all going to sleep at night and when we're batting [sic] down the hatches you go out and make sure hopefully He would prevent another car window from getting smashed.*

Amended PCRA Petition at 21 (quoting N.T., 11/10/97, at 89) (emphasis added by Appellant). Appellant argues that references to the Bible during arguments at the penalty phase render death sentences reversible *per se,* but because prosecutors are entitled to greater latitude in penalty-phase arguments than at the guilt phase, references to religion should also constitute prosecutorial misconduct at the guilt phase. *See Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630, 643 (1991) (finding reliance on religious material during penalty phase to be reversible error *per se*), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992); *Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516, 528 (1997) (noting that prosecutors are afforded greater latitude in exercising oratori-

cal flair while arguing for sentence of death). As Appellant appears to recognize, the holding in *Chambers* is limited to arguments in favor of a death sentence. *Chambers*, 599 A.2d at 643 ("We now admonish all prosecutors that reliance in any manner upon the Bible or any other religious writing *in support of the imposition of a penalty of death* is reversible per se . . . .") (emphasis added). Further, this Court has not imposed a rule mandating automatic reversal when a prosecutor refers to religion during closing arguments. Rather, this Court in *Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639 (1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997), stated in *dicta* that the *per se* rule in *Chambers* applies only when the reference to religion is used directly to support a penalty of death.[8] *Cook*, 676 A.2d at 651. In fact, the unique nature of penalty-phase hearings for capital convictions requires jurors to consider carefully only those factors set forth by the Legislature by way of statute. *See Chambers*, 599 A.2d at 644. Thus, when a prosecutor exhorts a jury to impose the death penalty based on biblical or other religious writings, he invites the jurors to consider factors outside of those specifically established by our Legislature, and in a manner that is considered to have the unavoidable effect of prejudicing their minds to impose the death penalty. We are not confronted with such a situation here, where the prosecutor referenced God during guilt-phase closing arguments, and Appellant does not argue, nor can he reasonably do so, that the statements prejudicially impacted his convictions. Accordingly, we decline to extend *Chambers's per se* rule to guilt-phase closing arguments.

### D. Guilt–Phase Jury Instructions

### 1. Malice Instruction

 Appellant contends that trial counsel should have objected to the trial court's instruction on malice because it

---

**8.** The *Cook* Court had already found that trial counsel was not ineffective because Cook's trial concluded three years before *Chambers* was decided. *Cook*, 676 A.2d at 651. Nonetheless, the Court further decided that even if *Chambers* applied, "under the circumstances at hand, trial counsel was not ineffective for failing to object to permissible comment on the evidence." *Id.*

reduced the prosecution's burden of disproving his self-defense claim. Appellant again raises only boilerplate claims regarding the second and third *Pierce* prongs: "trial counsel could have no imaginable basis for failing to object to such a burden-diminishing instruction[,] and as the instruction went to a core, disputed fact, appellant was harmed and error occurred." Appellant's Brief at 36. Accordingly, he has failed to develop this ineffectiveness claim properly. *See Bracey, supra.*[9]

## 2. First Degree Murder Instruction

■■■■■ Appellant contends that the trial court failed to define to the jury specifically which aspects of its instructions consti-

9. Moreover, this claim has no merit. Appellant objects to the instruction that malice may be inferred where there is "intentional use without legal excuse or legal justification of a deadly weapon on a vital part of another human body." N.T., 11/10/97, at 101. According to Appellant, the jurors were permitted to find malice even if they believed he acted in "unreasonable but sincere self-defense," Amended PCRA Petition at 26, thus lowering the Commonwealth's burden of disproving his self-defense claim. However, we must consider the court's charge to the jury as a whole to determine whether Appellant's isolated concern was prejudicial. *See Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 301 (2001). Our examination reveals that while the trial court's malice instruction did not clearly state whether the jury may infer malice if it finds unreasonable but sincere self-defense as long as it finds intentional use of a deadly weapon on a vital part of the victim, the court's subsequent instruction on voluntary manslaughter rejected that possibility:

If you find that at the time of the killing the defendant believed the circumstances to be such that if they existed would have justified the killing, *but his belief was unreasonable*, and if you believe that as a result thereof he intentionally or knowingly killed [the victim], then your verdict *should be* guilty of voluntary manslaughter.

The law is that a person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that if they existed would have justified the killing but his belief was unreasonable.

N.T., 11/10/97, at 108–09 (emphases added). We presume that the jury followed the court's instructions. *Spotz*, 896 A.2d at 1224. Instantly, while the malice instruction may have indirectly allowed for the *possibility* of finding malice while also finding unreasonable but sincere self-defense, the voluntary manslaughter instruction *specifically* forbade the jury from making such a finding. Appellant does not direct us to any other reason, by way of jury questions or other evidence, to indicate any confusion by the jury.

tuted the actual "elements" of first-degree murder, and whether it must find each of those elements beyond a reasonable doubt. Once again, Appellant has made only a boilerplate allegation that counsel's failure to object was "without any imaginable tactical basis," *see* Appellant's Brief at 30, and therefore failed to provide the PCRA court or this Court with a basis upon which to grant him relief. *See Bracey, supra.*[10]

### 3. Juror Unanimity

Appellant argues that the trial court should have instructed the jury that it must be unanimous not only to the verdict, but also as to whether each element was proven beyond a reasonable doubt. Appellant again attempts to preserve this argument through an ineffective assistance of counsel allegation in an insufficient and boilerplate manner, as he merely incorporates the "ineffectiveness and prejudice/harm analysis of" his previous claim. *See* Appellant's Brief at 31. Thus, his claim must fail. *See Bracey, supra.*

### 4. Self–Defense

Appellant challenges the trial court's instruction that the jury must find him "free from fault" in order to consider his self-defense claim. His solitary attempt to plead the second and third *Pierce* prongs appears in the final paragraph, in which he states: "[T]his resulted in a reduced burden of

10. Furthermore, the court's instructions thoroughly informed the jury of the elements of first-degree murder, and Appellant provides no support for his assertion that a court must specifically label each element as "an element." Additionally, we find no error with the court's instruction, which was almost *verbatim* from Pennsylvania Suggested Standard Jury Instruction (Crim.) 7.01(2), on reasonable doubt: "It is the Commonwealth that always has the burden of proving each and every element of each of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt." N.T., 11/10/97, at 97. We have previously addressed a challenge to the language used in this instruction and found the claim meritless. *See Holloway,* 739 A.2d at 1047–48. Therefore, trial counsel had no reason to object to this instruction. *See Commonwealth v. Marinelli,* 589 Pa. 682, 910 A.2d 672, 680 (2006) (Opinion Announcing Judgment of Court) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.") (citing *Commonwealth v. (Darrick) Hall,* 549 Pa.269, 701 A.2d 190, 203 (1997)).

proof, establishing both the absence of tactical basis and harm/prejudice." Appellant's Brief at 35. This boilerplate claim fails to satisfy his burden of proving that counsel was ineffective. *See Bracey, supra.* This claim also fails.[11]

### 5. Carjacking Evidence

Appellant asserts that the trial court improperly defined how the jury was permitted to consider the carjacking evidence in relation to his intent to rob Mr. Campbell. His sole argument is a full incorporation of his claims from Section I.A of this Opinion. We deny this claim for the same reasons we denied his claim in Section I.A. *See supra* Part I.A.

### 6. Malice—Reasonable Doubt

 Appellant argues that the trial court failed to instruct the jury that the inference of malice, by way of finding the use of a deadly weapon on a vital part of the body, must be found beyond a reasonable doubt. Here, Appellant has arguably pleaded the *Pierce* prongs properly by claiming that there is arguable merit to the underlying claim, that there was no tactical basis for remaining silent because absence of malice was essential to his defense on the homicide charge, and that he was prejudiced by the prosecution's diminished burden of proof. *See Pierce, supra.* Nonetheless, Appellant is not entitled to relief on this claim. This Court has previously considered the language utilized by the trial court, which mirrored the Pennsylvania Suggested Standard Jury Instructions, and found that it properly informed the jury that the Commonwealth had the burden of proving every element of each crime beyond a reasonable doubt. *See Holloway,* 739 A.2d at 1047–48.[12] In turn, the court instructed the jury that

11. Additionally, as noted in footnote 11 *supra,* the jury was properly informed of the elements it was required to find beyond a reasonable doubt in order to return a guilty verdict. If the trial court properly instructed the jurors of the Commonwealth's burden of proof for each crime and element, then it follows that the jurors could not reach a unanimous verdict without each finding that the Commonwealth had satisfied all of its burdens of proof.

12. The only difference between the statements is that the *Holloway* trial court instructed the jury that the Commonwealth "always has the

malice was an element of murder. We discern no reason why the jury would believe the Commonwealth could prove malice by another, lower standard. Thus, there was no reason for counsel to object to the malice instruction. *See Marinelli, supra; (Darrick) Hall, supra.*

Appellant adds, "This error is compounded by that detailed in [Part I.D.2] regarding jury instructions. The jury was never told what constituted 'elements' of murder, and thus never knew which points of proof had to satisfy the reasonable doubt standard." Amended PCRA Petition at 36. However, Appellant provides no support for his assertion that a court must specifically label each element as "an element," and this Court's holding in *Holloway* contradicts his claim. *See Holloway, supra.* Accordingly, counsel cannot be faulted for failing to object to this instruction. *See Marinelli, supra; (Darrick) Hall, supra.*

### 7. Malice—Self-defense

▊ Appellant's final claim of error regarding the guilt-phase jury instructions is that the trial court failed to instruct the jury that self-defense may negate malice, and that the Commonwealth must prove beyond a reasonable doubt that his actions were not in self-defense. Appellant has arguably pleaded each of the *Pierce* elements in contending that trial counsel was ineffective for failing to raise this claim with the trial court.

Appellant raises these specific concerns:

No matter how the entirety of the closing argument is parsed, this Court never explained, using any language, that [ (]2) That evidence of self-defense, from whatever source, tends to negate the malice required for murder; (3) That in order to meet its burden of proof on the element of malice,

burden of proving each and every element of the crime charged," whereas the trial court here instructed that the Commonwealth "always has the burden of proving each and every element *of each of the crimes* charged." *Compare Holloway,* 739 A.2d at 1048, *with* N.T., 11/10/97, at 97 (emphasis added). The trial court properly added language to adjust for the multiple crimes with which Appellant was charged.

the prosecution must exclude self-defense beyond a reasonable doubt.

Appellant's Brief at 37 (quoting *Commonwealth v. Heatherington*, 477 Pa. 562, 385 A.2d 338, 341 (1978)) (internal quotation omitted).

Our examination of the entire jury charge, however, reveals that Appellant's argument is completely without merit. The trial court issued the following instructions: (1) self-defense is "a complete defense to the charge," N.T., 11/10/97, at 128; (2) "the Commonwealth has the burden of proving *beyond a reasonable doubt* that the defendant did not act in justifiable self-defense," *id.* at 125 (emphasis added); and (3) "because the Commonwealth has the burden of proving that the defendant did not act in self-defense you cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant did not act in justifiable self-defense as I have defined it to you." *Id.* at 127–28. It is true that these instructions did not specifically identify malice as that element which self-defense would specifically negate. Nonetheless, it defies logic that Appellant could have incurred prejudice when the trial court instructed that the Commonwealth must disprove Appellant's claim of self-defense beyond a reasonable doubt, and further that self-defense is a complete defense to the overall charge of murder. Simply put, if the Commonwealth failed to prove beyond a reasonable doubt that Appellant's actions were not in self-defense, then the jury could not find him guilty of the overall charge of murder, thus rendering the effect of self-defense on malice irrelevant. Accordingly, there was no reason for trial counsel to object to these instructions. *See Marinelli, supra; (Darrick) Hall, supra.*

### E. Direct Appeal Counsel's Sufficiency Argument

Although this Court on direct appeal found that the evidence was sufficient to support his first-degree murder conviction, Appellant challenges appellate counsel's litigation of that issue. Appellant contends that counsel's allegedly deficient "Statement of the Case" and failure to file a reply brief or petition for reargument prevented this Court from

resolving his claim properly. The PCRA court found that this Court addressed his underlying sufficiency claim on direct appeal, and thus considered his ineffectiveness claim previously litigated. *See* PCRA Court Op. at 9. As Appellant correctly notes, this claim is cognizable under the PCRA because we now consider an ineffectiveness claim to be a discrete legal ground for relief from the underlying claim. *See Collins,* 888 A.2d at 571. Thus, the PCRA court erred in finding this claim previously litigated. *See id.*

 Normally, we would remand this claim to the PCRA court to reconsider Appellant's ineffectiveness claim. However, this Court's holding in *Collins* does not negate the requirement that a petitioner must plead and prove properly all the elements of the *Pierce* test. *See Washington,* 927 A.2d at 594 (noting that even in situations where this Court would customarily remand for further development of claim by PCRA court, remand is unnecessary when petitioner "fails to thoroughly plead and prove" ineffectiveness elements) (internal quotation omitted). Appellant in the instant case argues the merits of his underlying claim in substantial depth and also argues prejudice, but fails to mention, let alone plead and prove, the "reasonable strategy" prong. Therefore, Appellant fails to prove that direct appeal counsel was ineffective. *See Bracey, supra.*

### F. Failure to Investigate Victim's Background

[31] Appellant raises his next claim as a challenge to counsel's effectiveness at both the guilt and penalty phases of trial. He asserts that counsel failed to investigate whether Mr. Campbell was licensed to carry the firearm found on his person the day he was killed.[13] According to Appellant, had trial counsel introduced evidence that Mr. Campbell was not licensed to carry a firearm, such fact would have supported his

---

13. Trial counsel admitted that he made no attempt to determine whether Mr. Campbell had a license to carry the gun. N.T., 10/31/05, at 45–47. Counsel speculated that, had he known that Mr. Campbell was unlicensed, he would have tried to introduce the evidence, though he could not specify at the hearing for what purpose he would have done so. *Id.* at 45–46.

claim of self-defense at the guilt phase of trial and, at the penalty phase of trial, would have countered the Commonwealth's depiction of Mr. Campbell as an upstanding member of the community who was a member of the "Town Watch" program. We find a failure to develop the requisite prejudice in either claim.[14]

## 1. Guilt Phase

In arguing the merits of the underlying claim for the guilt phase of trial, Appellant compares the facts of his case with those in *Commonwealth v. (Reginald) Hall*, 574 Pa. 233, 830 A.2d 537 (2003). In *(Reginald) Hall*, the trial court instructed the jury that it was permitted to consider Hall's possession and use of an unlicensed firearm as presumptive evidence of the intent required for aggravated assault. *Id.* at 543. Hall argued that this instruction violated his rights of due process because it lowered the Commonwealth's burden of proving his intent to inflict serious bodily injury. *Id.* at 545–46. This Court disagreed, first observing that the trial court set forth "a mere permissive inference, rather than a mandatory presumption." *Id.* at 545. The *(Reginald) Hall* Court then held that the test set forth in *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), controlled permissive inferences, and thus due process would be implicated "only 'if, under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference.'" *(Reginald) Hall*, 830 A.2d at 546 (quoting *Ulster County*, 442 U.S. at 157, 99 S.Ct. 2213). The Court concluded that "[t]he permissive inference, *on this record*, was constitutional," thus confirming that a permissive inference is subject to a fact-specific inquiry in determining whether such an inference is constitutional. *Id.* at 550 (emphasis added). The facts in *Hall* supported the inference because Hall "was

14. In this claim, Appellant again does not explicitly plead each of the *Pierce* prongs. Nonetheless, his petition focuses on the arguable-merit and prejudice prongs, while his examination of counsel at the PCRA hearing focused on the reasonable-strategy prong. *See* PCRA Petition at 77–82; N.T., 10/31/05, at 44–47. Therefore, we will address the merits of this ineffectiveness claim.

not simply detected in possession of an unlicensed firearm; he was caught in the act of firing it at another man" and "the trial evidence thus suggested a person ... willing and prepared to take matters into his own hands, including, if necessary, seeking out and shooting others." *Id.* at 549–50.

Thus, contrary to Appellant's belief, *(Reginald) Hall* does not espouse an automatic inference of other illegal activity by mere illegal possession of the firearm, but rather requires courts to examine the legitimacy of such an inference on a case-by-case basis. As such, Appellant's situation is markedly different from that in *(Reginald) Hall* because he offers no other evidence that Mr. Campbell was about to engage in illegal activity other than his own claim of self-defense and Mr. Campbell's possession of a gun. Moreover, because he is alleging counsel's ineffectiveness in failing to investigate the licensing status of Mr. Campbell's firearm, Appellant must prove not only that the trial court would have admitted this evidence, but also that this evidence would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 (holding that prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also Pierce, supra.* In the context of the trial evidence, Appellant fails to develop any claim of prejudice. Despite his insistence that the evidence would have supported his claim of self-defense, he does not contest this Court's finding on direct appeal that the unlicensed gun was snapped in Mr. Campbell's holster at the time of the shooting. In fact, his mere assertion that Mr. Campbell's possession of an unlicensed firearm "establish[ed] criminal conduct on the part of the deceased" would not only fall far short of the standards for a permissive inference, but would have almost no probative value to his self-defense claim, as he obviously was not aware of the fact that the gun was unlicensed and thus could not link the unlicensed status with any alleged fear of death or serious bodily injury. *See* 18 Pa.C.S. § 505(b)(2) (limiting use of deadly force for self-defense); Pa.R.E. 401, 402 (permitting admission of evidence only if it exhibits "any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *see also* Pa.R.E. 404(b)(3) (forbidding admission of wrong-acts evidence in criminal case unless probative value outweighs potential for prejudice). Accordingly, Appellant fails to develop the requisite prejudice at the guilt-phase of trial by counsel's failure to investigate this claim, and thus fails to prove that trial counsel was ineffective.[15] *See Bracey, supra.*

## 2. Penalty Phase

Appellant avers that, had counsel presented evidence of the non-licensure, he could have effectively countered the Commonwealth's victim-impact evidence portraying Mr. Campbell as an active member of the community. For many of the reasons stated immediately above, Appellant fails to prove prejudice on this claim. He cites no other illegal or dangerous activity by Mr. Campbell, nor does he offer any guidance as to how the unlicensed status of Mr. Campbell's holstered and secured firearm would have enhanced his mitigation evidence, particularly since he was unaware that the firearm was unlicensed until he filed the instant petition. He claims only that the jury must be permitted "to consider, and give weight to, *any* potentially mitigating evidence arising from the defendant's background *or* from the circumstances of the crime." Appellant's Brief at 54 (citing *Mills v. Maryland,* 486 U.S. 367, 374–75, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)) (emphasis in Appellant's Brief). We have determined already that this evidence bears little relevance when placed in context

**15.** Appellant also raises a claim pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is well-settled that the Commonwealth is not obligated to provide evidence that is readily obtainable by the defendant. *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 305 (1999), *cert. denied,* 528 U.S. 975, 120 S.Ct. 422, 145 L.Ed.2d 330 (1999). He argues this claim "separate from counsel's failures," and thus does not raise it as an ineffective assistance of counsel claim. *See* Appellant's Brief at 54. Accordingly, his *Brady* claim is waived. *See* 42 Pa.C.S. § 9544(b) (stating issue is waived on PCRA review if petitioner could have raised it in prior proceeding, but failed to do so); 42 Pa.C.S. § 9543(a)(2)(ii) (permitting claim if raised as underlying issue to challenge of counsel's stewardship).

with the evidence gathered at the crime scene. Appellant is due no relief on this claim.

## II. Penalty-phase Ineffective Assistance of Counsel

### A. Mitigation Evidence

 Appellant alleges several errors in relation to trial counsel's investigation and presentation of mitigation evidence at the penalty phase of trial. As this Court has observed, the United States Supreme Court has held that the Sixth Amendment requires capital counsel "to pursue all reasonably available avenues of developing mitigation evidence." *Commonwealth v. Gorby*, 589 Pa. 364, 909 A.2d 775, 790 (2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). Counsel must exercise reasonable professional judgment, and in examining counsel's conduct, "we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable." *Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 784 (2004) (quoting *Wiggins*, 539 U.S. at 523, 123 S.Ct. 2527). We proceed to address Appellant's claims *seriatim*.[16]

### 1. Failure to Provide Psychologist with Mitigation Records

Appellant argues that counsel's failure to provide his psychologist, Dr. Allan M. Tepper, with various records in a timely fashion prevented Dr. Tepper from testifying effectively to certain mitigating factors. Appellant first questions counsel's failure to investigate and provide Dr. Tepper with evidence of his father's history of drug abuse, based on the affidavit of his older brother. He also contends that counsel's submission to Dr. Tepper of Appellant's drug history, as detailed in a pre-sentence report, was untimely because Dr. Tepper received them only after interviewing Appellant. Finally, he criticizes counsel's failure to investigate or present evidence of his caretaking function while his mother was

---

**16.** Unlike many of his guilt-phase claims, Appellant has pleaded the *Pierce* elements.

suffering from cancer. Appellant fails to prove counsel's ineffectiveness for each of these claims.

 Regarding his father's history of drug abuse, Dr. Tepper testified to the following at the PCRA evidentiary hearing:

The fact that it's reported that the father, *in addition to being separated and absent* and using somewhat physical discipline in the home, also, at least it's represented, had a daily or a chronic cocaine problem, again, would be very significant with respect to [Appellant]'s upbringing, his development, what he was exposed to, whether that literally was something he modeled.

The substance abuse in parents is a very important piece of information for any kind of evaluation.

N.T., 10/31/05, at 114–15 (emphasis added). At the penalty-phase hearing, Dr. Tepper added that Appellant's father was absent during Appellant's formative years. N.T., 11/12/97, at 94. Dr. Tepper did not explain, nor does Appellant explain now, how Appellant could have modeled his father's drug abuse when Appellant rarely saw his father. Furthermore, Appellant's brother, who claimed in an affidavit that their father used cocaine daily, testified:

Well, from 1968 to '81, I wouldn't know if he did cocaine daily. I was born in '63, so that would be five years old. I don't think he would have showed me that then.

In '81 he separated from my mom. Okay? So I know he wasn't doing it between '68 and '81. Or I didn't see him do it then.

N.T., 11/28/05, at 67. In fact, the first instance in which Appellant's brother claims to have seen their father use cocaine was in 1985, and rather than state that it was a daily abuse of cocaine, he made a vague response of seeing the cocaine usage on "[m]ore than [o]ne" occasion. *Id.* at 75. Moreover, Dr. Tepper noted the substance abuse history of Appellant's mother and siblings. When considered in light of Appellant's penalty-phase argument that his father's abandonment created hardship, and the jury's finding of his life history

as a mitigating factor, we cannot conclude that counsel's omission of this evidence was prejudicial.[17] *See Strickland, supra.*

■ Appellant's claim about the timing of counsel's disclosure of Appellant's drug history to Dr. Tepper is equally without merit. Dr. Tepper testified that this information "would have been additional information regarding that part of the evaluation" of his drug-use history. N.T., 10/31/05, at 109–10. While Dr. Tepper noted that the information would have provided outside confirmation of Appellant's drug-use history and further details of it, he did not state that the evidence would have changed the diagnosis he expressed in his report or to the jury. Because this evidence would have been merely cumulative to Dr. Tepper's findings, Appellant suffered no prejudice from the timing of counsel's disclosure.

■ Finally, Appellant presents numerous affidavits from witnesses who state that they would have testified to Appellant's caretaking duties during family illnesses, particularly his mother's battle with cancer. He claims that Dr. Tepper would have conducted a more thorough interview of Appellant had he heard from these witnesses. Again, Dr. Tepper did not claim at any point that these affidavits suggested a different diagnosis from the one he offered to the penalty-phase jury. In fact, as the Commonwealth observes, Dr. Tepper specifically admitted that the affidavits "don't now allow [him] to make a diagnosis that [he] did not make back then." *Id.* at 135. Accordingly, we hold Appellant has failed to prove the ineffectiveness of his trial counsel in relation to the information provided to Dr. Tepper.

17. Appellant also claims that the failure to investigate his father's drug abuse deprived him of arguing the Section 9711(e)(2) and (3) mitigators to the jury. *See* 42 Pa.C.S. § 9711(e)(2), (3) (providing that extreme mental or emotional disturbance and substantial impairment of capacity to appreciate criminality of conduct are mitigating factors). Appellant provided no evidence, either through Dr. Tepper or some evidence other than his own assertion, linking his father's drug abuse with any impairment or influence he may have been under at the time of the crimes. As a result, this claim is undeveloped.

## 2. Investigation of Mitigation Witnesses

 Appellant again offers the affidavits of potential mitigation witnesses to argue that counsel was ineffective by failing to present them at the penalty-phase hearing. At the PCRA evidentiary hearing, Appellant questioned trial counsel about only one of those witnesses, April Brown, Appellant's former girlfriend. However, counsel explained that Brown was "extremely hostile" at the trial. *Id.* at 79–80. Accordingly, counsel provided a reasonable basis for his decision not to present Brown as a mitigation witness. Because Appellant did not question counsel about the other witnesses, we have no basis upon which to evaluate counsel's strategy regarding these witnesses and cannot grant relief on this claim. *See Bracey, supra.*

## 3. Failure to Introduce Successful Rehabilitation and Mental Health Evidence

 Appellant argues that counsel was ineffective for failing to present evidence of the following: (1) his successful rehabilitation at a juvenile institution; (2) diagnosis of mixed personality disorder in 1989; and (3) psychiatric evaluation revealing an IQ of 75. He fails to develop the second and third claims in any meaningful fashion, except to provide citations to the relevant reports, nor did he question counsel about these claims. Accordingly, those claims are waived.[18] *See Bracey, supra.* Therefore, we will address only his rehabilitation-evidence claim.

 Appellant raises two arguments in regard to his rehabilitation at the juvenile institution. He first insists that counsel was required to forward the Forestry Camp records to Dr. Tepper because they indicated that he is receptive to,

---

18. Appellant did not argue to the PCRA court that his sentence is unconstitutional under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), nor does he raise such argument on appeal. Therefore, there is no need to remand to the PCRA court for consideration of any *Atkins*-based claims. *See generally Commonwealth v. Miller*, 585 Pa. 144, 888 A.2d 624 (2005) (setting forth elements that appellant must prove by preponderance of evidence in order to receive *Atkins*-based relief).

and would benefit from, rehabilitation. He also suggests that counsel should have used records from Youth Forestry Camp, a secure, juvenile institution, to counter the Commonwealth's evidence that Appellant had behavioral problems at the Sleighton School.

During the evidentiary hearing, Dr. Tepper acknowledged that he was aware of the Youth Forestry Camp records:

A. Yes, I know. I had the [Pre–Sentence Investigation report].

Q. Okay.

A. —and that he had made—there's an indication there that he made a positive adjustment at the Youth Forestry placement and that I was aware of.

Today, as we discussed, I cannot say a hundred percent if I had all those specific Youth Forestry records themselves, but there was a reference to them in the 1989 presentence report.

N.T., 10/31/05, at 140. Dr. Tepper also specifically acknowledged the report on cross-examination during the penalty-phase hearing:

Q: And your records indicate he was there for some period of time, don't they?

A: At the Forestry Camp?

Q: Yes.

A: Yes.

N.T., 11/12/97, at 121. Even if Dr. Tepper did not receive the report from Youth Forestry Camp, he was aware of the existence of a beneficial report and did not consider it crucial to his evaluation. Counsel added that "[i]f [Dr. Tepper] said [the report] is important, I would have brought it out." *Id.* at 95. Accordingly, Appellant cannot prove that he was prejudiced by the failure, if any, of counsel to provide the report to Dr. Tepper.

▆ Nonetheless, Appellant asserts that counsel should have introduced the Youth Forestry Camp report to counter the unfavorable Sleighton School report, which had indicated

that Appellant was not receptive to rehabilitation.[19] Initially, we observe that Appellant also claims the Commonwealth impermissibly introduced the evidence as a "non-statutory aggravator." Appellant's Brief at 68. After reviewing the penalty-phase transcripts and jury instructions, we find no evidence that the Commonwealth attempted to introduce the Sleighton School report as an aggravator. Rather, the Commonwealth questioned Dr. Tepper further about his evaluation of Appellant's schooling. *See* N.T., 11/12/97, at 121. Thus, the Commonwealth's introduction of the report was appropriate, and Appellant's supporting citations involving impermissible use of non-statutory aggravating evidence, are inapposite. *Compare Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 898–99 (2004) (permitting Commonwealth to question defendant about prior acquittal when direct examination opened door to subject), *with* Appellant's Brief at 68 n. 40 (citing *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 795–97 (2004) (finding evidence that defendant entered into consent decree inadmissible because it was not finding of guilt and defendant's character was not at issue); *Commonwealth v. DeJesus*, 580 Pa. 303, 860 A.2d 102, 113 (2004) (vacating sentence when prosecutor exhorted jury to "send a message" during closing arguments); *Malloy, supra* (same)).[20]

We therefore examine whether, in the context of Dr. Tepper's testimony, counsel should have asked Dr. Tepper on re-direct examination about the Youth Forestry Camp report. When questioned by Appellant about why he did not introduce the report, counsel responded, "I do see the next sentence [from the report], which gives me pause here. 'His counselor was of the opinion that he derived maximum benefit from his

**19.** We note that Appellant's supporting citation is actually to the unfavorable Sleighton School report. *See* Appellant's Brief at 68 (citing Exhibit D–5, at 2). Regardless, we have reviewed both the Sleighton School report and the Youth Forestry Camp report. *See* Exhibit C–1.

**20.** Appellant provides bare assertions on this claim, consisting of a five-line bulletpoint and a footnote with the citations to those cases involving impermissible use of non-statutory aggravators. Notably, Appellant provides no citation to the notes of testimony where he alleges the prosecutor introduced the evidence, nor does he elaborate on the context in which the evidence appeared.

placement there.'" N.T., 10/31/05, at 52. The Commonwealth argues that counsel reasonably assessed the statement as "implying that any further attempts at rehabilitation would be futile." Commonwealth's Brief at 53. We disagree. Counsel, on cross-examination, clarified his evaluation of the report:

A. Well, it gave me pause because the jury just convicted him of doing these crimes and the report indicates they've already done what they could for him at Youth Forestry Camp so that's—that's why I was given pause.

Q. In other words, it showed he could not be rehabilitated?

A. Yes.

N.T., 10/31/05, at 96. Our review of the report reveals that counsel's evaluation was unreasonable, as the report clearly details that Appellant had complied with all of the camp's goals. Thus, the camp did not, as the Commonwealth implies, give up on Appellant, but rather suggested that Appellant had adequately satisfied the requirements for leaving the camp. We cannot agree, therefore, that counsel's assessment of the report, as stated at the evidentiary hearing and construed by the Commonwealth, was reasonable.

 Nevertheless, Appellant must demonstrate that counsel's assessment was prejudicial. *See Pierce, supra.* When asked about the potential impact of the Youth Forestry Camp report, Dr. Tepper was less than certain:

Q. Had you been asked by [counsel] what the Forestry Camp—forgive me, I'm struggling for a word—how [Appellant] behaved at the Forestry Camp, would you have been able to respond to the points made by [the prosecutor]?

A. I can't say I would have been able to respond point by point to what Mr. Sax was asking me, but the Forestry Camp background would be—would have been a way to show that, with certain kind [sic] of guidance or structure, [Appellant] had certain either resources or ability to respond. That's what the Forestry Camp records seem to indicate.

N.T., 10/31/05, at 118. As we found above, Dr. Tepper had opportunities on cross-examination to discuss the Youth For-

estry Camp report, but did not do so. Further, Appellant compiled a significant history of drug abuse and criminal activity soon after his positive report from the Youth Forestry Camp, which was issued seven years prior to the instant crimes.[21] In the context of Dr. Tepper's testimony and the jury's finding of the previous-crimes aggravator, we cannot conclude that Appellant was prejudiced by counsel's interpretation of the Youth Forestry Camp report. Accordingly, Appellant is not entitled to relief on this claim. *See Basemore, supra.*

## B. Life–Qualifying the Jury

 Appellant asserts that he was prejudiced by the trial court's and counsel's failure to "life-qualify" the jury. He argues that it was not only counsel's, but also the court's duty to inquire whether a prospective juror would be unable to return a life-sentence verdict based on his or her view of the death penalty. It is well-settled that while trial counsel is permitted to life-qualify the jury, he is not *per se* ineffective for failing to do so. *See Commonwealth v. Rega,* 933 A.2d 997, 1020 (Pa.2007) (citing *Commonwealth v. Speight,* 578 Pa. 520, 854 A.2d 450, 459 (2004); *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 441 (1999); *Commonwealth v. Hardcastle,* 549 Pa. 450, 701 A.2d 541 (1997)). Counsel is obligated only to ensure that the jury selection process is fair and impartial. *Id.* Appellant recognizes this precedent, but cites to a research note from *Justice Quarterly* in arguing that we should revisit our previous holdings. *See* Appellant's Brief at 79–80 (citing Wanda D. Foglia, *They Know Not What They Do: Unguided and Misguided Discretion in Pennsylvania Capital Cases,* 20 JUST. Q. 187 (2003)). However, Appellant did not raise this argument with the PCRA court, thereby waiving it on appeal. *See Basemore, supra.*

---

**21.** This evidence, if explored, may have been relevant to counsel's strategy, as a jury could potentially have considered Appellant incapable of long-term rehabilitation as a result of his criminal activity soon after leaving Youth Forestry Camp.

■ Thus, Appellant must demonstrate that he was actually prejudiced by the failure to life-qualify the jury. *See Rega, supra.* In this regard, Appellant's situation mirrors that of the appellants in *Rega* and *Speight,* and our resolution here is the same. *See Rega,* 933 A.2d at 1020; *Speight,* 854 A.2d at 459. Just as this Court held in *Rega* and *Speight,* we also hold that Appellant has failed to demonstrate any prejudice "by counsel's failure to ask life-qualification questions," particularly when "each juror underwent extensive questioning concerning his or her ability to follow the law and assured the trial court that he or she would be able to render a fair and impartial verdict and sentence." *Rega,* 933 A.2d at 1021. Appellant is therefore due no relief on this claim.

## C. Jury Instructions

Appellant contends that counsel should have objected to the following three of the trial court's jury instructions during the penalty phase of trial:

[1.] Now, if your sentence is life imprisonment, you should check the finding in either C–1 or C–2 which explains why you're rejecting the death sentence and imposing a life sentence.

. . .

[2.] Now, loosely speaking, aggravating circumstances are things about the killing and the killer which make a first degree murder case more terrible and deserving of the death penalty, while mitigating circumstances are those things which make the case less terrible and less deserving of the death penalty.

. . .

[3.] The sentence you impose must be in accordance with the law as I instruct you and not based on sympathy, prejudice, emotion, or public opinion and not based on victim impact.

N.T., 11/12/97, at 151, 49, 147. Appellant recited each instruction to counsel at the PCRA evidentiary hearing, then asked only whether he had any reason to object, to which counsel

responded, each time, that he thought there was no reason to object, at which point Appellant's inquiry ended. N.T., 10/31/05, at 54–56.

 Appellant has pleaded the three prongs of the *Pierce* test. When reviewing a challenge to the jury instructions, we consider the entire charge, not merely the individual portions highlighted by the appellant. *See Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273, 1274 (1990). "The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury." *Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346, 360 (1999) (citing *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991)). We turn now to each of Appellant's challenges to the penalty-phase jury instruction.

## 1. "Rejecting the Death Sentence"

 Appellant acknowledges that this Court, in a plurality decision, recently rejected a similar challenge to this instruction. *See* Appellant's Brief at 81 (citing *Marinelli,* 910 A.2d at 682–84 (Opinion Announcing Judgment of Court)). In fact, he admits that *Marinelli* rejected "his precise claim." *Id.* He nonetheless contends that *Marinelli* was wrongly decided because it did not consider the United States Supreme Court's holding in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), or conduct a constitutional analysis of competing instructions.[22] We disagree with both of his reasons for revisiting *Marinelli.*

We first note that, although *Marinelli* was a plurality decision, a majority of Justices joined the holding and reasoning of Madame Justice Newman's resolution of Marinelli's challenge to the relevant instruction. Mr. Justice Eakin and Madame Justice Baldwin joined Madame Justice Newman's Opinion Announcing the Judgment of the Court, and Mr. Justice Saylor concurred, expressly joining Madame Justice

22. Appellant states that *Marinelli* is inapplicable, despite acknowledging that it addressed this "precise claim." Appellant's Brief at 81. We proceed on the assumption that he argues *Marinelli* does not apply because it was wrongly decided.

Newman's resolution of this claim. *See Marinelli,* 910 A.2d at 690 (Saylor, J., concurring).[23] Appellant argues that the *Marinelli* plurality was required to evaluate the jury instructions in light of *Ring* because, he claims, the United States Supreme Court emphasized that the burden of proof for aggravating factors lies with the Commonwealth. Appellant's Brief at 81–82. We fail to see, however, why this Court was required to discuss *Ring* in evaluating the propriety of the instruction. The *Ring* Court held that the Sixth Amendment forbids a judge from undertaking the jury's function of determining whether aggravating circumstances justifying a death sentence existed. *Ring,* 536 U.S. at 609, 122 S.Ct. 2428. The *Marinelli* Court was not confronted with the issue of whether an improper arbiter determined the existence of aggravating factors, nor are we confronted with that issue now.

Regardless, the *Marinelli* plurality applied the exact standard Appellant claims *Ring* espouses:

> Thus, the three-sentence excerpt upon which Appellant relies appears in the context of the trial court's *repeated emphasis on the more exacting requirements that the Commonwealth faced* in attempting to prove its two aggravating circumstances, compared to the relatively lenient standards applicable to Appellant with respect to his two mitigating circumstances.

*Marinelli,* 910 A.2d at 684 (emphasis added). In evaluating the entirety of the court's instruction to the jury, the plurality noted that the trial court clearly differentiated between the preponderance standard for defendants in proving mitigating circumstances, and the beyond-a-reasonable-doubt standard required of the Commonwealth in proving aggravating circumstances. *Id.* at 683. The *Marinelli* trial court also instructed the jury, "If you do not all agree on one or the other of these findings, then *the only verdict* that you may return is a sentence of life imprisonment." *Id.* (emphasis added). The

23. Mr. Chief Justice Cappy concurred, joined by Mr. Justice Baer, finding the claims waived for failure to allege trial counsel's ineffectiveness properly, and therefore disagreed with addressing the merits of the claim. *Id.* at 690 (Cappy, C.J., concurring). Mr. Justice Castille concurred in the result.

plurality concluded that the trial court aptly described the appropriate burdens of proof and presumptions to the jury. *Id.* at 684. We can discern no reason why *Ring* required a different analysis or conclusion.

 Appellant also cites *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), for the proposition that the *Marinelli* Court should have examined whether "competing instructions," one of which is unconstitutional, renders a death sentence illegal. Appellant's reliance on *Boyde* is misplaced. He specifically relies on the following statement from *Boyde:*

> In some instances, to be sure, we have held that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside. In those cases, a jury is clearly instructed by the court that it may convict a defendant on an impermissible legal theory, as well as on a proper theory or theories. Although it is possible that the guilty verdict may have had a proper basis, it is equally likely that the verdict ... rested on an unconstitutional ground, and we have declined to choose between two such likely possibilities.

*Id.* at 380, 110 S.Ct. 1190 (quotations and citations omitted).[24] However, the instant, challenged instruction did not clearly instruct the jury to sentence the defendant to death on an impermissible legal theory. Rather, Appellant surmises that instructing the jury to "explain[ ] why you're rejecting the death sentence and imposing a life sentence" equates to an instruction that it may return a life sentence only if it rejects the death sentence. We cannot agree. While *Boyde* reflects the sound principle that jury instructions should not put appellate courts in a position where they must determine whether a jury relied on a proper or illegal basis of guilt, it does not prevent courts from examining the propriety of a

---

24. Ultimately, the *Boyde* Court determined that only a single jury instruction was at issue, and therefore found that a "reasonable likelihood" standard applied as to whether the jury was prevented from considering relevant mitigation evidence. *Id.* at 380, 110 S.Ct. 1190.

portion of an instruction by considering it in the context of the entire instruction. Therefore, if the instruction does not clearly require the jury to rely on an unconstitutional basis, then the courts may examine the instruction as a whole to determine the context of the challenged statement. In point of fact, the *Boyde* Court found that the instruction at issue there was "ambiguous and therefore subject to an erroneous interpretation." *Id.* at 380, 110 S.Ct. 1190. Although Appellant claims that the instant instruction is not ambiguous, he argues only that it implies a presumption of a death sentence. Thus, he is, in actuality, arguing that it was subject to an erroneous interpretation of presuming a sentence of death, which triggers the *Boyde* Court's "reasonable probability" test. *See id.*

In *Marinelli,* and instantly, the statement in question instructs the jury to place a checkmark next to the reason why it is imposing a life sentence. This requirement was entirely consistent with Section 9711(c)(1)(iv), which mandates that the jury must return a sentence of death if it "finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." 42 Pa.C.S. § 9711(c)(1)(iv). In the context of the entire jury instruction, the instruction at issue, which required only a written notation of the statutorily-mandated reason for imposing a life sentence, did not actually "conflict" with the clear and overwhelming instructions pertaining to the heightened burden of proof and unanimous votes necessary to impose a sentence of death, and also of the lower burden of proof and fewer number of votes necessary to find mitigating factors. *See Marinelli,* 910 A.2d at 682–84.

█ We therefore find no error in the analysis in *Marinelli,* and because Appellant argues only that *Marinelli* was wrongly decided, he is not entitled to relief. Moreover, Appellant cannot correctly argue that the jury was forced to render a sentence of death by the instruction. In addition to requiring the jury to note the reasons for imposing a life sentence, the court also required the jury to explain why it was impos-

ing a sentence of death rather than a life sentence, and also to list the specific aggravating and mitigating circumstances found. *See* Verdict Sheet at 1; N.T., 11/12/97, at 150–51. We therefore hold that an instruction requiring the jury to explain why it is rejecting a death sentence is not *per se* unconstitutional, and Appellant's claim fails. *See Boyde, supra; Marinelli, supra.*

## 2. More Terrible/Less Terrible

Appellant raises two primary arguments in regard to the "more terrible/less terrible" instruction. He first contends that murder cannot, by definition, be "less terrible," and that, once again, this Court's decision in *Marinelli* was wrongly decided.[25] He also asserts the trial court failed to instruct the jury properly as to the Section 9711(e)(8) mitigator, and thus counsel was ineffective for failing to insist on a more specific instruction. There is no merit to either of these claims.

Appellant again asks us to revisit the decision reached by the *Marinelli* plurality, insisting that the instruction, by using the conjunctive "and" rather than the disjunctive "or" in describing mitigating factors, restricted the jury's overall consideration of mitigating evidence unrelated to the "terribleness" of the crime. We have, however, found no merit to this exact argument on numerous occasions before and after *Marinelli. See, e.g., Washington,* 927 A.2d at 613–14; *Commonwealth v. Rios,* 591 Pa. 583, 920 A.2d 790, 817 (2007); *Commonwealth v. Johnson,* 572 Pa. 283, 815 A.2d 563, 587–88 (2002); *Commonwealth v. Stevens,* 559 Pa. 171, 739 A.2d 507, 527 (1999). Appellant raises no new argument on this issue, and thus provides no reason to revisit the well-settled precedent rejecting his claim.

Appellant nonetheless attempts to distinguish the instant case from *Marinelli* and similar cases by contending

**25.** Unlike the "reject death" instruction, it is unclear whether a majority of Justices agreed with Madame Justice Newman's evaluation of the "more terrible/less terrible" instruction, as Mr. Justice Saylor's concurring opinion did not specifically join that section or provide further comment.

that the trial court's failure to instruct the jury on the Section 9711(e)(8) mitigator, combined with the "more terrible/less terrible" instruction, narrowed the jury's consideration of mitigating factors even further. While his claim arguably has merit, Appellant cannot demonstrate that he was prejudiced by the court's omission. The jury found in favor of Appellant for the Section 9711(e)(8) mitigator, despite Appellant's concerns, and it specifically listed "His Life History" as the mitigating factor. *See* Verdict Sheet at 1. Therefore, even if Appellant is correct in arguing that the trial court impermissibly narrowed the focus of mitigating factors to only those relevant to the murder itself, the jury would appear to have ignored that instruction by finding his difficult family background as a mitigator. Because he cannot demonstrate prejudice, he fails to prove counsel's ineffectiveness. *See Basemore, supra; Pierce, supra.*

### 3. No Sympathy

Appellant's final challenge to the jury instructions is that they precluded the jury from giving any effect to feelings of sympathy it may have had for him. He argues that while Pennsylvania statute constitutionally forbids "mere sympathy" or "absolute mercy" verdicts, the jury may nonetheless consider "feelings of sympathy for the defendant that arise out of the mitigating evidence presented in the case." Appellant's Brief at 89–90 (citing *Penry v. Lynaugh*, 492 U.S. 302, 326–27, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (plurality)). This Court addressed this exact claim, quoting a United States Supreme Court decision clarifying the standard for sympathy instructions:

> Further, the United States Supreme Court has also held that an instruction directing the jury to disregard sympathy in its sentencing determination does not violate the Eighth Amendment. In *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Court rejected the very argument set forth by Appellant here. It explained:
>
> > This argument misapprehends the distinction between allowing the jury to consider mitigating evidence and

guiding their consideration. It is no doubt constitutionally permissible, if not constitutionally required, for the State to insist that the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence.

*Saffle*, 494 U.S. at 492–93, 110 S.Ct. 1257. As it is well established that a jury instruction not to allow feelings of sympathy to influence the sentencing consideration is constitutionally proper, counsel in this case were not ineffective in failing to object to such instruction. Appellant's claim thus fails.

*Rios*, 920 A.2d at 817–18. As Appellant presents no new argument for our consideration, we rely on our holding in *Rios* and deny his claim of ineffective counsel.

### 4. Cumulative Instruction Error

Appellant concludes his challenge to counsel's effectiveness pertaining to the jury instructions by claiming that the cumulative effect of the jury instructions resulted in a prejudicial verdict. He provides no citation in support of his claim and therefore waives it. *See* Pa.R.A.P. 2119(b). Moreover, because we have found no error in any of the challenged instructions, there is no basis upon which to find any accumulation of errors.

### D. Cumulative Error at Penalty Phase

Finally, Appellant contends that all of his claims pertaining to counsel's stewardship at the penalty phase of trial cumulatively impacted the reliability of those proceedings. We have long held that "no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Rainey*, 928 A.2d 215, 245 (Pa.2007) (citing *Commonwealth v. (James) Williams*, 586 Pa.553, 896 A.2d 523, 548 (2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007); *Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1208–09 (1999), *Commonwealth v. (Craig) Williams*, 532 Pa.265, 615 A.2d 716, 722 (1992)).

### III. Conclusion

Accordingly, for all of the above-stated reasons, we affirm the order of the PCRA court. We direct the Prothonotary of this Court to transmit the complete record of this case to the Governor, pursuant to 42 Pa.C.S. § 9711(i).

Order affirmed. Jurisdiction relinquished.

Justice CASTILLE, EAKIN and BAER and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice SAYLOR concurs in the result.

Chief Justice CAPPY concurring.

I concur in the result of the majority opinion for the reasons set forth more fully in my concurring opinion in *Commonwealth v. Marinelli*, 589 Pa. 682, 910 A.2d 672, 689–90 (2006). As the majority points out, this case does not involve any "layered" claims of ineffectiveness. Thus, there is no need to consider the case law analyzing "layered" claims and the analysis in this case is controlled by *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). For this reason, I respectfully disassociate myself from the majority's proffered alternative analyses. As I stated in *Marinelli*, "either Appellant has raised his claims in a manner sufficient for review under *Pierce* or they are waived." 910 A.2d at 690.