J-S60019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRAD M. CONCORDIA | : | |
| | : | |
| Appellant | : | No. 781 MDA 2018 |

Appeal from the PCRA Order April 12, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000037-2016

BEFORE: SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:              **FILED DECEMBER 19, 2018**

Appellant Brad M. Concordia appeals from the order denying his first timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that the PCRA court erred in rejecting his claims based on the ineffective assistance of counsel.  We affirm.

This Court summarized the history of this case in a previous memorandum.

> The facts underlying [Appellant]'s conviction are well-known to the parties and we need not recite them herein.  In summary, the trial court found [Appellant] took a deposit for construction work from a customer [(the complainant)], but did not intend to complete the work or return the deposit.  Following a waiver trial on December 14, 2016, the court found [Appellant] guilty of [home improvement fraud, theft by deception, and receiving stolen property.[1]]  On December 27, 2016, the trial court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] At trial, Anthony Rearden, Esq. (trial counsel), represented Appellant.

> sentenced [Appellant] to a term of three to 23 months' imprisonment for home improvement fraud, followed by a consecutive five years' probation. . . .
>
> On January 24, 2017, [Appellant] represented by new counsel, filed a petition for leave to file post-sentence motions *nunc pro tunc*, as well as a motion for modification of sentence. On January 25, 2017, the court granted [Appellant] permission to file his post-sentence motion *nunc pro tunc*, but denied the motion for modification.

*Commonwealth v. Concordia*, 177 MDA 2017, at 2-3 (Pa. Super. filed Sept. 27, 2017) (unpublished mem.) (footnotes omitted). Appellant filed a timely direct appeal, which this Court affirmed on September 27, 2017. Appellant did not petition for allowance of appeal to the Pennsylvania Supreme Court.

On November 21, 2017, Appellant filed a timely first counseled PCRA petition, claiming ineffective assistance of trial counsel. The trial court held an evidentiary hearing on February 1, 2018. On April 12, 2018, the PCRA court denied Appellant's PCRA petition, concluding that Appellant's ineffectiveness claims were meritless. *See* PCRA Ct. Order, 4/12/18, at 4.

On May 10, 2018, Appellant timely appealed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court filed a memorandum opinion relying on the reasoning it set forth in its order dismissing Appellant's PCRA petition.

Appellant raises the following issue on appeal: "Whether the Appellant presented sufficient evidence to warrant post-conviction relief based upon ineffective trial counsel[.]" Appellant's Brief at 4 (some capitalization omitted).

- 2 -

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Mitchell***, 105 A.3d 1257, 1265 (Pa. 2014) (internal quotation marks and citation omitted). "Finally, we may affirm a PCRA court's decision on any grounds if the record supports it." ***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016) (citation omitted).

It is well-settled that to establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Turetsky***, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** (citation omitted); ***see also Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) ("A failure to

satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." (citation omitted)).

Our Supreme Court has explained that in analyzing whether trial counsel had reasonable basis "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Brown*, --- A.3d ----, 2018 WL 5046812, *22 (Pa. 2018) (internal quotation marks and citation omitted). Further, "[w]e will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative 'offered a potential for success substantially greater than the course actually pursued.'" *Id.* (citation omitted).

Regarding prejudice, the Court has stated that it "means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Counsel is presumed to have been effective and the burden of rebutting that presumption rests with the petitioner." *Commonwealth v. Fletcher*, 986 A.2d 759, 772 (Pa. 2009) (citations and internal quotation marks omitted). We add that "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (citation omitted).

In Appellant's sole issue he raises two claims of trial counsel ineffectiveness: (1) failure to prepare for trial and (2) failure to present

- 4 -

Appellant with an Accelerated Rehabilitative Disposition (ARD) offer. Appellant's Brief at 13-14.

### Ineffectiveness for Failure to Prepare for Trial

Appellant claims that trial counsel failed to prepare for trial for several reasons: trial counsel (a) failed to investigate character witnesses; (b) failed to prepare witnesses, including Appellant; (c) failed to investigate Appellant's claim that Appellant could not perform the contract due to medical issues; and (d) failed to advise Appellant of the risks of proceeding to trial. *Id.* at 13-14, 16.

*Character Witnesses*

Appellant first claims that trial counsel did not investigate Appellant's request for character witnesses. *Id.* at 13. It is well-established that "failure to call character witnesses does not constitute *per se* ineffectiveness." *Commonwealth v. Treiber*, 121 A.3d 435, 463 (Pa. 2015) (citation omitted). A defendant bears the burden of proving that

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Id.* at 464 (citation omitted).

Instantly, Appellant has not identified a character witness that he would have called to testify as to Appellant's character at trial. Further, at the evidentiary hearing, Appellant did not present the testimony of a character

- 5 -

witness that was available and willing to testify. **See generally** N.T. PCRA Hr'g, 2/1/18. Accordingly, because Appellant has not met his burden of proof, we agree with the PCRA court's conclusion that trial counsel was not ineffective. **See Treiber**, 121 A.3d at 463-64.

*Preparation of Witnesses*

Appellant next claims that trial counsel was ineffective for failing to "prepare[] any witnesses, including Appellant, for trial." Appellant's Brief at 13. This statement constitutes the totality of Appellant's argument as to this issue. Pennsylvania courts have long held that bald assertions of ineffectiveness are insufficient to meet the ineffectiveness test. **See Chmiel**, 30 A.3d at 1128 (Pa. 2011); **see also Commonwealth v. Natividad**, 938 A.2d 310, 322 (Pa. 2007) ("A PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness." (citation omitted)). Moreover, "undeveloped argument[s], which fail[] to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply do[] not satisfy [an a]ppellant's burden of establishing that he is entitled to any relief." **Commonwealth v. Bracey**, 795 A.2d 935, 940 n.4 (Pa. 2001).

Here, Appellant's bald assertion that trial counsel failed to prepare witnesses is insufficient to meet Appellant's burden of proving ineffectiveness. **See Chmiel**, 30 A.3d at 1128; **Natividad**, 938 A.2d at 322; **Bracey**, 795 A.2d at 940 n.4. Accordingly, we agree with the trial court's determination

that trial counsel was not ineffective in this regard. ***See Turetsky***, 925 A.2d at 880.

*Defense at Trial*

Next, Appellant claims that he testified at trial that he could not perform the contract due to medical issues. Appellant's Brief at 13. Appellant contends that it was "medical issues, not the intent to defraud, [that led] to Appellant's failure to comply with the contract." ***Id.*** Appellant argues that trial counsel was ineffective for failing to investigate or corroborate Appellant's defense. ***Id.***

By way of background, during trial, the following relevant exchange occurred:

> [Trial counsel:] Is there a reason why you -- what prevented you from starting th[e project]?
>
> [Appellant:] Reasons were, number one, this six-to-eight-week period was at that time, you know, the approximate starting time of when we thought we would be able to get to 'em. Then I started getting medical problems, medical issues, which I have doctors' notes and plenty of notifications of that at that time that prevented me from driving a vehicle and/or working with power tools or ladders.
>
> * * *
>
> [Trial counsel:] Yeah, Your Honor. I would like to have this marked as defense Exhibit 1.
>
> * * *
>
> [Trial counsel:] [Appellant], I'm going to show you what has been marked as defense Exhibit No. 1. Can you identify what this is?
>
> [Appellant:] Medical records from previous months of during that period of time and previous -- and actually current. There is --

[Trial counsel:]  Are those your medical records?

[Appellant:]  Yes.

[Trial counsel:]  Okay.

[Appellant:]  There is also a doctor's note that was dated back a month after this contract was signed that showed that I wasn't supposed to be driving or working.  That's with the paperwork also.

[Trial counsel:]  Now, did you have any discussion about these particular health issues that you were having with the [complainants]?

[Appellant:]  I did mention once or twice that I was having some medical problems.  As they stated in their comments up here, they stated I was going through some medical problems and my father was at the same time, which didn't allow me to proceed with my job as well as I usually do.  And at that time, I thought I was actually having seizures or brain tumors or something like that, which really had me depressed into a funk.  That wasn't really how I operate.  Usually I'm very on top of things and calling people back right away.  And it really was in my mind that I was in trouble medically.

[Trial counsel:]  But did you explain that in that kind of detail with the [complainants]?

[Appellant:]  No.  At that point, I didn't know what was going on. I was just worried and scared.  But at the same time, the [complainants] were contacted several times and -- and in that sense of returning phone calls.

N.T. Trial, 12/14/16, at 54-56.  In sum, trial counsel questioned Appellant as to what prevented him from performing the contract, examined Appellant regarding his claims of medical issues, and admitted into evidence medical records in support of Appellant's defense.  *See id.* at 54-56, 71-76.

Here, Appellant has not explained what additional investigation trial counsel should have performed or what different course of action he should

have taken in addressing Appellant's defense. *See Brown*, --- A.3d ----, 2018 WL 5046812, at *22. Accordingly, we agree with the trial court's determination that trial counsel was not ineffective as to this claim. *See Turetsky*, 925 A.2d at 880.

*Risks of Jury Trial*

Appellant further claims that trial counsel never advised Appellant of the risks of proceeding to trial. Appellant's Brief at 16. Appellant argues that he was not advised of the charges against him, the Sentencing Guidelines or the possible maximum sentence, or that some of Appellant's prior clients would be testifying against him. *Id.* at 17. Therefore, Appellant maintains, "he was unable to make informed decisions regarding pleas and lacked the ability to know the risk he was taking by proceeding to trial." *Id.* at 16.

The evidence of record belies Appellant's claims. On November 4, 2016, Appellant signed a written jury trial waiver colloquy. In relevant part, Appellant answered "Yes" to the following questions:

> 21. Do you understand that you also have the right to choose whether you want to be tried by a jury or by a [j]udge sitting without a jury?
>
> 22. Do you understand that if you choose to have a jury trial, the [j]udge will send for a panel of thirty or forty prospective jurors all drawn at random by the County from a Statewide Jury information system, which consists of a list of individuals from the Department of Transportation and may also contain a list of names from the County voter registration list or any other list in which in the opinion of the jury selection commission will provide a number of names of prospective jurors which is equal or greater than the number of names contained in the voter registration list?

23. Do you understand that the prospective jurors will come down to the courtroom and that you, your attorney, the District Attorney, and the [j]udge will then proceed to pick a jury of twelve people from this group of thirty or forty prospective jurors?

24. Do you understand that you have an absolute right to personally participate in selecting a jury?

\* \* \*

34. Do you understand that the jurors will listen to evidence in the case and then they will go in a separate room all by themselves, discuss the case, and then vote on whether to find you guilty or not guilty?

35. Do you understand that, if you are tried by a jury, you cannot be convicted unless all twelve jurors are convinced beyond a reasonable doubt that you are guilty? This is because a jury verdict is required by law to be unanimous which means that all twelve jurors must agree on the verdict, thus if all twelve vote "guilty," the verdict is "guilty" and if all twelve vote "not guilty" the verdict is "not guilty."

\* \* \*

37. Do you understand that instead of a jury trial you can choose to be tried by a [j]udge sitting without a jury in which case you will have all the same rights you would have with a jury trial except that the [j]udge sitting alone will decide whether or not you are guilty? . . .

Jury Trial Waiver Colloquy, 11/4/16, at 3-4. Further, the written jury trial waiver colloquy also included the offenses Appellant was charged with, whether it was a felony or a misdemeanor, and the possible maximum sentences and fines, which Appellant acknowledged that he understood. *Id.* at 5.

Also on November 4, 2016, the trial court conducted an oral colloquy where Appellant waived his right to a jury trial. *See generally* N.T. Colloquy, 11/24/16. During that colloquy, Appellant acknowledged that he

- 10 -

"reviewed[ed] each and every one of the 39 paragraphs" in the written waiver-of-jury-trial colloquy and that he understood everything contained therein. *Id.* at 3. At the conclusion of the colloquy, the trial court found that Appellant's waiver of his right to a jury trial was knowing, voluntary, and intelligent. *Id.* at 5.

Regarding the witnesses the Commonwealth intended to call at trial, trial counsel testified at the PCRA hearing as follows:

> [Commonwealth:] Do you recall if the Commonwealth gave you notice that they were going to be presenting additional witnesses for [Pa.R.E.] 404(b) evidence prior to trial?
>
> [Trial counsel:] Yes, they did.
>
> * * *
>
> [Commonwealth:] [Trial counsel, I'm] showing you what's been marked as Commonwealth's exhibit number 2. Do you recognize that document?
>
> [Trial counsel:] Yes. This was a letter from [the Commonwealth] in regard to, you know, what we had discussed in regard to [Appellant]'s case as far as a plea bargain or, you know, some other resolution.
>
> [Commonwealth:] And is there information in that letter that indicates that the Commonwealth intended to present additional witnesses pursuant to Rule 404(b)?
>
> [Trial counsel:] Yes. There are a number of people listed here.[2]

_____

2 The Commonwealth's letter provided, in relevant part:

> Please be advised that pursuant to Pennsylvania Rules of Evidence, 404(b) pertaining to the introduction of evidence at trial of other crimes, wrongs or acts, the Commonwealth may introduce testimony from its witnesses, including Grace May

[Commonwealth:] Did you have an opportunity to discuss that potential 404(b) evidence or those witnesses with [Appellant]?

[Trial counsel:] I did discuss that with [Appellant] and, you know, that was a significant factor for me to, again, continue to urge him to take the plea of 2 years['] probation, however, at the last moment he decided not to.

[Commonwealth:] So in spite of your advice to take the plea, it was [Appellant]'s decision to go to trial in this case?

[Trial counsel:] Yes, it was.

N.T. PCRA Hr'g, 2/1/18, at 19-20.

In its order, following the hearing, the PCRA court found that Appellant and trial counsel had discussed the differences between a bench trial and a jury trial, that Appellant had been charged with a felony, and that Appellant's prior customers could be called by the Commonwealth to present evidence of prior dealings. PCRA Ct. Order, 4/12/18, at 2. The PCRA court added that "[h]aving the opportunity to observe [Appellant], we find that his statements made to the contrary were palpably false." *Id.*

---

Craze, Christopher Lincoln, and Ruth Marrero, concerning the prior instance of fraudulent practice by [Appellant]. All three of the aforementioned witnesses had contracted with [Appellant] to perform home improvement at their respective properties . . . . [Appellant] failed to perform the work as contracted and was subsequently charged by the West Reading Police for theft and home improvement fraud and related offenses for his failure to complete the work. [Appellant] only returned the funds paid by each victim upon the filing of charges[,] which were later dismissed pursuant to an agreement with the District Attorney's office.

N.T. PCRA Hr'g, 2/1/18, at 28.

Accordingly, we conclude the PCRA court's conclusions are supported by the record and there is no merit to Appellant's claims of ineffectiveness in this regard. ***See Mitchell***, 105 A.3d at 1265; ***Turetsky***, 925 A.2d at 880.

**Ineffectiveness for Failure to Communicate ARD Offer**

Finally, Appellant argues that trial counsel did not present him with an ARD offer. Appellant's Brief at 14. Appellant claims he has been prejudiced because had he been notified of the ARD offer and what the program involved, he would have accepted that offer. ***Id.*** at 15.

By way of further background, during the PCRA hearing the following relevant exchange occurred:

> [PCRA counsel:] During the course of the time the case was being litigated there were plea offers that were made back and forth between and discussions held about nontrial disposition. At any time did [trial counsel] discuss with you the ARD program?
>
> [Appellant:] He had discussed that it was offered.
>
> [PCRA counsel:] So [trial counsel] informed you that it was offered. Did he explain to you the benefits of the ARD programs?
>
> [Appellant:] No.
>
> * * *
>
> [Commonwealth:] Yes. Okay. So you knew about before going to trial you could have taken an ARD offer instead of going to trial in this case?
>
> [Appellant:] I knew there was an offer, yes.

N.T. PCRA Hr'g, 2/1/18, at 10-11. Moreover, trial counsel testified that although he didn't have the files of the case, "I would have thought, you know,

I would have discussed that with [Appellant] and would have suggested that [Appellant] accept that[.]" *Id.* at 18.

The PCRA court concluded that Appellant and trial counsel "discussed that[] the Commonwealth made an offer of ARD."  PCRA Ct. Order, 4/12/18, at 2.  The PCRA court added that it observed Appellant testify at the PCRA hearing and found his testimony to be incredible.  *Id.*

Accordingly, we conclude that the record belies Appellant's claim that trial counsel did not communicate an ARD offer to Appellant.  Therefore, we hold that the trial court did not err in its determination that trial counsel was not ineffective.  *See Mitchell*, 105 A.3d at 1265; *Turetsky*, 925 A.2d at 880.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2018