J-S75002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH TUNSTALL | : | |
| | : | |
| Appellant | : | No. 7 EDA 2018 |

Appeal from the PCRA Order December 14, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009724-2011

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.: **FILED JUNE 05, 2019**

Appellant, Joseph Tunstall, challenges the order entered in the Philadelphia Court of Common Pleas, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The relevant facts and procedural history of this case are as follows. Jamira Tunstall encountered her ex-boyfriend, Darrell Wright, while drinking at the Grand Slam Bar in Philadelphia. Following an argument, Tunstall left the bar, shouting that Wright had hit her. Before long, she returned with several companions. After she and Wright began arguing again, the bartender asked them to leave. They left separately, with Tunstall shouting that she would be "making a call to her people." N.T. Trial, 11/19/13, at 216.

Tunstall then called her uncle, Appellant, and told him about the fight. She asked Appellant to go to the Grand Slam Bar and "fuck up" Wright on her

behalf. N.T. Trial, 11/20/13, at 39. Witnesses saw Appellant in the vicinity of the Grand Slam Bar shortly thereafter, asking for Wright's whereabouts. One of Appellant's companions displayed a firearm.

Meanwhile, Wright had walked home and informed his cousin, Kelly Nelson, of the fight. Nelson unsuccessfully attempted to calm Wright before Wright left the house again.

Nelson then walked to the Grand Slam Bar in search of Wright, who was not inside. Nelson ordered and finished a drink before leaving the bar. Outside, he encountered Appellant and several other men. Appellant yelled, "your people slapped my niece." N.T. Trial, 11/21/13, at 200. Appellant and his accomplices began shooting at Nelson. Nelson suffered a total of ten gunshot wounds, fired from weapons of two different calibers. He died at the scene.

A jury convicted Appellant of first-degree murder, criminal conspiracy, and possession of a firearm without a license. He was sentenced to life imprisonment without the possibility of parole. On appeal, this Court affirmed his judgment of sentence. The Pennsylvania Supreme Court denied his petition for allowance of appeal on February 2, 2016.

Appellant filed his first timely, counseled PCRA petition on December 15, 2016. The PCRA court issued notice of its intent to dismiss Appellant's petition without an evidentiary hearing, pursuant to Pa.R.Crim.P. 907. The court then dismissed Appellant's petition. This appeal is now properly before us.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is

supported by the record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing … such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

In each of his claims, Appellant argues trial counsel was ineffective in his representation. To obtain relief on an ineffectiveness claim, a petitioner must plead and prove by a preponderance of the evidence "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

"It is well-established that counsel is presumed effective, and a PCRA petitioner bears the burden of proving ineffectiveness." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779-780 (Pa. Super. 2015) (citations omitted). To prove ineffectiveness, a petitioner must establish his underlying claim has arguable merit; no reasonable basis existed for counsel's failure to raise these claims; and he suffered prejudice as a result of counsel's inaction. ***See Commonwealth v. VanDivner***, 178 A.3d 108, 114 (Pa. 2018). "The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs." ***Commonwealth v. Natividad***, 938 A.2d 310, 321 (Pa. 2007) (citation and internal quotation marks omitted).

Appellant first alleges trial counsel failed to introduce a text message proving the existence of an alternate suspect. In the text message, Jamira Tunstall instructed a man named "Geo" to "strap up now." Commonwealth's Exhibit 88. Appellant claims this statement ordered Geo, in street language, to get a gun and confront Darrell Wright. He believes the statement should have been admitted to show its possible effect on the recipient, Geo. Appellant avers counsel's error deprived him of the ability to present the jury with another suspect, and so concludes he is entitled to relief based on counsel's ineffectiveness. We disagree.

When an appellant alleges counsel was ineffective for failing to introduce evidence, the appellant must prove not only that the trial court would have admitted the evidence, but also that introduction of the evidence would have resulted in a different outcome. *See Natividad*, 938 A.2d at 330. If an appellant fails to demonstrate that counsel's omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone, without determining whether the other prongs of the ineffectiveness test have been met. *See Commonwealth v. Trieber*, 121 A.3d 435, 451 (Pa. 2015).

Here, the jury heard that Jamira Tunstall called Appellant, her uncle, and told him Darrell Wright hit her during an argument at the Grand Slam Bar near her apartment complex. *See* N.T. Trial, 11/20/13, at 39. She testified that she asked Appellant to fight Wright. *See id*., at 42.

The jury also heard testimony from Darren Rogers. He testified that he was high at the time of Kelly Nelson's murder, and could not remember

- 4 -

anything about that night. *See* N.T. Trial, 11/19/13, at 242. The Commonwealth then introduced Rogers's earlier statements to police, as well as his photo identification of Appellant. *See id*., at 243.

In those statements, Rogers averred he knew Nelson for six or seven years before the murder. *See id*., at 257. He also indicated he first met Appellant roughly six months before the murder. *See id*., 265. Rogers informed police he saw Appellant standing in the street with several other people near the rental office of Jamira Tunstall's apartment complex. *See* N.T. Trial, 11/21/13, at 200.

Rogers heard Appellant yell "your people slapped my niece," as he and his accomplices surrounded someone Rogers could not see. *Id*. He saw "sparks going off in front of" Appellant and heard gunshots. N.T. Trial, 11/19/13, at 260. Rogers spotted other people ducking. *See id*. He then identified Appellant in an eight-photograph array as "Joey," whom he knew to be Jamira Tunstall's uncle. *See id*., at 269-270. At trial, Rogers claimed he could not remember making the above statements to police. *See id*., at 261.

Quinton Gamble testified after Rogers. He denied seeing Appellant near the murder scene. *See* N.T. Trial, 11/20/13, at 112. In response to this testimony, the Commonwealth introduced Gamble's prior statement to police. *See id*., at 113. In it, Gamble stated that Jamira Tunstall's uncle, Appellant, knocked on Gamble's door on the night of the murder. *See id*., at 114.

Appellant and another man, "Fatty," asked Gamble if he had seen Darrell Wright. *See id*. During this discussion, Fatty showed Gamble a firearm. *See*

*id*. About twenty minutes later, Gamble heard gunshots coming from the rental office, near the Grand Slam Bar. *See id*. Gamble then saw Appellant, Fatty, and another man walking away from that area.

The Commonwealth also presented evidence that Kelly Nelson's death was caused by ten gunshot wounds, which were fired from weapons of two different calibers. *See* N.T. 11/21/13, at 78-81.

In sum, the jury heard testimony that Appellant and a group of men confronted Nelson. Appellant was seen firing a gun at Nelson, who later died from gunshot wounds. These wounds were inflicted by more than one firearm.

Based on the foregoing, Appellant cannot demonstrate that counsel's failure to introduce evidence of another suspect in Nelson's death adversely affected the outcome of the trial. *See Trieber*, 121 A.3d at 451. Even if counsel had introduced Jamira Tunstall's text message to Geo to "strap up now," and the jury believed the message provoked Geo to shoot Nelson, such evidence would not exonerate Appellant. The testimony evinced at trial showed Appellant and several other men confronted Nelson, and more than one man fired a gun at Nelson. Nelson died from multiple gunshot wounds fired from weapons of different calibers. The suggestion that Geo was among these shooters does not disprove Appellant's own participation in Nelson's murder. Therefore, Appellant is due no relief on this claim.

Appellant next argues counsel was ineffective for failing to introduce photographs from the location where Darren Rogers allegedly witnessed the murder. According to Appellant, photographs of the murder scene taken from

where Rogers stood that night would prove the impossibility of facial identification. Appellant believes such evidence would have eviscerated Rogers's identification of Appellant as the murderer.

The PCRA court responded to this assertion as follows:

[T]he trial record establishes that it was reasonable for trial counsel not to use a map and photographs to attack the credibility of Rogers. Rogers gave a statement to the police in which he stated that he saw Jamill Rone, [Appellant], and several other men surrounding someone. Rogers then heard [Appellant], whom he knew, yell, "you people slapped my niece," and then saw [Appellant] fire a gun. However, Rogers testified at a preliminary hearing that he did not see the shooting, but, rather, was high on drugs and asleep at Andrea's house, nowhere near the site of the shooting, when the killing occurred. At trial, Rogers again testified that he did not see the shooting because he was high on drugs and sleeping at Andrea's house. Rogers's testimony at the trial was corroborated by defense witness Tierra Nesmith, Rogers's [girlfriend] at the time. She testified that, on the night of the shooting, she was with Rogers at Andrea's house, when Rogers got high on drugs and went to sleep around 10:00 p.m. Accordingly, defense counsel had excellent evidence to refute the credibility of Rogers's initial statement to police.

Moreover, there is not a reasonable probability that the outcome of the trial would have been different had defense counsel attacked the credibility of Rogers's statement to police with maps and photographs. First, in the statement, Rogers did not reveal the exact location from where he observed the shooting, stating only that he was "walking back from the Sunoco and was across from Big Momma's house." Because Rogers repudiated the statement by the time of the preliminary hearing, it was not possible to get any clarification from him as to precisely where he was standing when the shooting occurred. As a result, any analysis purporting to attack the statement based on Rogers's point of view would have had limited probative value.

Second, Rogers knew [Appellant], and claimed in the statement not only to have seen [Appellant], but also to have heard him screaming right before the shooting. Maps and photographs would

not have diminished Rogers's claim of recognizing [Appellant's] voice.

Third, what Rogers claimed that he heard [Appellant] say strongly corroborated his claim that [Appellant] was the speaker. In particular, Rogers told the police that he heard [Appellant] scream, "you people slapped my niece." Since the slapping of Jamira Tunstall, [Appellant's] niece, by Wright, the victim's cousin, allegedly precipitated the shooting, it seemed highly unlikely that Rogers's statement was a complete fabrication.

Finally, [] there was compelling evidence of [Appellant's] guilt apart from Rogers's statement, including the testimony of witness Quinton Gamble, cell tower records [showing Appellant's cell phone was used in the vicinity of the shooting immediately before and after the shooting], and incriminating text messages on [Appellant's] phone[, including incoming texts advising Appellant to "stop talking" and to erase his text messages].

PCRA Court Opinion, filed 3/28/18, at 7-10 (citations omitted).

The record supports the court's analysis. Appellant cannot prove that the outcome of his trial would have changed if counsel had obtained and been permitted to introduce the photographs. *See Natividad*, 938 A.2d at 330. The PCRA court was not obligated to hold an evidentiary hearing on this claim, as Appellant could not have obtained relief. *See Mason*, 130 A.3d at 617.

Appellant also challenges trial counsel's failure to object to a text message exchange between Jamira Tunstall and Darrell Wright after the murder. Appellant claims the messages were hearsay, because the Commonwealth introduced them to prove the truth of their assertions. Appellant concludes counsel was ineffective for failing to object to the Commonwealth's introduction of the message.

- 8 -

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. **See** Pa.R.E. 801. Hearsay is inadmissible, with some exceptions. **See** Pa.R.E. 802, 803. However, "[w]hen an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." **Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999) (citation omitted). "[S]tatements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter contained therein." **Id**. (citation and footnote omitted).

Appellant challenges the following exchange of text messages:

[Wright]: So he kill my cousin instead of me.

[Wright]: Say no more

[Tunstall]: Rell im sorry 4 ur lost but ur not gone threatin me!
Commonwealth's Exhibit 88.

The PCRA court concluded that the statement was not hearsay, because it was not offered for the truth of the matter asserted: that "he," Appellant, killed Kelly Nelson. **See** PCRA Court Opinion, filed 3/28/18, at 8. Instead, the court found the Commonwealth introduced the text messages in order to show a possible motive for Nelson's death.

We agree. The Commonwealth did not introduce the text messages into evidence as proof that Appellant killed Wright's cousin, or to show that Tunstall was genuinely sorry for Nelson's death. Rather, these statements were offered

to show the ill-will between Tunstall and Wright, and thus establish Appellant's motive for killing Nelson.

The Commonwealth's theory of the case relied on showing that Tunstall's fight with Wright provoked Appellant to attack one of Wright's associates in order to defend his niece, Tunstall. **See** N.T. Trial, 11/20/13, at 53-54. Tunstall's mention of Wright's perceived threat to her earlier that evening, in connection with her reference to Wright's loss, supplied a link between those two events probative of motive. Therefore, the text messages were properly admitted. As such, trial counsel cannot be deemed ineffective for failing to object. **See Commonwealth v. Hanible**, 30 A.3d 426, 468 (Pa. 2011) (holding ineffectiveness claim premised on counsel's failure to object lacked arguable merit where counsel had no basis for objection).

Finally, Appellant argues he is entitled to a new trial under a "cumulative error" standard. He contends that the cumulative prejudicial effect of the claims set forth in his petition warrants relief.

The Pennsylvania Supreme Court has held that "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Busanet**, 54 A.3d 35, 75 (Pa. 2012) (citation omitted). "When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." **Commonwealth v. Elliott**, 80 A.3d 415, 450 (Pa. 2013) (citation omitted). Further, "prejudice does not accumulate

from two disparate claims." ***Commonwealth v. Smith***, 17 A.3d 873, 915 (Pa. 2011) (citation omitted).

To the extent we resolved on prejudice grounds Appellant's claims regarding counsel's failure to present text messages between Tunstall and her friend Geo, and the lack of photographs in the record to refute Darren Rogers's testimony, we found these claims alone did not prejudice Appellant and do not warrant relief. Even when considered in the aggregate, we find the outcome of trial would not have changed. ***See id***. Appellant is not entitled to relief on a cumulative prejudice standard. Accordingly, we affirm the PCRA court's denial of his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/19