J-S42008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARIQ SULTAN BROWN | : | |
| | : | |
| Appellant | : | No. 2622 EDA 2019 |

Appeal from the PCRA Order Entered August 23, 2019
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002261-2016

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.: **FILED NOVEMBER 13, 2020**

Tariq Sultan Brown appeals from the order entered in the Delaware County Court of Common Pleas on August 23, 2019, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546 after a hearing. Brown raises three claims of ineffective assistance of counsel. We affirm.

Brown was charged with rape, statutory sexual assault, indecent assault, endangering the welfare of a child and sexual assault after his stepdaughter C.M. reported in December 2015 that Brown had sexually assaulted her three years prior, when she was fifteen years old. After his first trial ended in a mistrial due to a hung jury, a second trial took place from November 29, 2016 until December 1, 2016. The jury found Brown guilty of the above charges.

On May 22, 2017, Brown was sentenced to an aggregate term of ten to twenty years' incarceration, followed by ten years' probation. Brown filed a timely notice of appeal, which was later withdrawn. Counsel then filed the instant PCRA petition. A hearing was held, after which both parties were given the opportunity to submit memoranda. On August 23, 2019, the PCRA court dismissed the petition.

Brown raises the following issues on appeal:

1. Did the PCRA court err when it held that prior counsel was not ineffective for failing to impeach C.M. with her withdrawn criminal complaint?

2. Did the PCRA court err when it held that prior counsel was not ineffective for failing to request a curative instruction after eliciting prior bad acts testimony?

3. Did the PCRA court err when it held that prior counsel was not ineffective for failing to move for a mistrial after the trial court failed to give a curative instruction following the prosecutor's improper commentary on [Brown] and his character witnesses' truthfulness during closing arguments?

Appellant's Brief, at 2.

Our standard of review of a PCRA court's denial of a petition for post-conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *See Commonwealth v. Hall*, 867 A.2d 619, 628 (Pa. Super. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). Our scope of review is limited

by the parameters of the PCRA. **See Commonwealth v. Heilman**, 867 A.2d 542, 544 (Pa. Super. 2005).

Here, all of Brown's claims allege ineffectiveness of prior counsel. To determine whether the PCRA court erred in dismissing Brown's petition on the claims of ineffectiveness of counsel, we must assess whether Brown established all three elements of an ineffectiveness claim:

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place … Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Johnson**, 868 A.2d 1278, 1281 (Pa. Super. 2005) (citations omitted).

Moreover, "[w]e presume counsel is effective and place upon Appellant the burden of proving otherwise." **Commonwealth v. Springer**, 961 A.2d 1262, 1267-1268 (Pa. Super. 2008) (citation omitted). This Court will grant relief only if Appellant satisfies each of the three prongs necessary to prove counsel ineffective. **See Commonwealth v. Natividad**, 938 A.2d 310, 321-22 (Pa. 2007) (citation omitted). Thus, we may deny any ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." **Id**. at 321 (citation omitted).

In his first issue, Brown argues that trial counsel was ineffective for failing to impeach C.M. with her "withdrawn criminal complaint". Appellant's Brief, at 2. It bears remarking that in the argument section of Brown's brief, he claims trial counsel was ineffective for failing to impeach C.M. with "her December 18, 2015 *police report*" in which he claims C.M. declined to file charges. **See** Appellant's Brief, at 10 (emphasis supplied). This differs from how Brown phrased the issue in the "Statement of Questions Involved" section of his brief as well as in his Rule 1925(b) concise statement. **See** Appellant's Brief, at 2; **see also** Appellant's 1925 Concise Statement, at ¶1. Therefore, to the extent that Brown argues trial counsel should have impeached C.M. with the *police report,* this issue could be deemed waived. **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Nevertheless, as the trial court was able to ascertain the actual document Brown is referencing based on the date, we will briefly address the matter as well.

Our review of the record indicates that no prior criminal complaint was ever filed, nor for that matter withdrawn. After a review of the record it is clear that Brown is referencing an entry in a police department incident report of a meeting that occurred on October 18, 2015. **See** Exhibit C-2, at 1-6. Brown emphasizes that during a discussion with police on December 18, 2015, C.M. stated she did not intend to file criminal charges, and that trial counsel should have impeached her regarding that statement.

On the contrary, it was C.M.'s mother, C.B., who spoke with Officer Stephen Jones on October 18, 2015 to report that her daughter had been sexually assaulted by her step-father. **See** Exhibit C-2, at 4. In his narrative of that meeting, Officer Jones wrote that C.B. indicated that C.M. did not wish to press charges and she was there to explore her options. **See id**.

Therefore, it was the victim's mother, not the victim herself, who spoke with the police on the date in question. Further, trial counsel questioned Detective Houghton regarding Officer Jones's entry in the incident report and specifically highlighted that C.B. reported that her daughter initially did not want to file criminal charges. **See** N.T., 11/30/2016, at 122-126. While Brown argues that this evidence was hearsay and therefore improper, we note that the Commonwealth did not raise any objection to it. **See id**. As a result, the jury was not precluded from considering this testimony. **See Commonwealth v. Foreman**, 797 A.2d 1005, 1012 (Pa. Super. 2002).

Therefore, trial counsel did present the jury with testimony that C.M. had initially not planned to file charges. We further note that the Commonwealth did not seek to contradict this assertion, and concedes it on appeal. **See** Appellee's Brief, at 9 ("the victim and her mother expressed an initial reluctance on their part to pursue her victimization as a criminal matter").

Brown does not assert any new information that would have been gained by confronting C.M. with this information. In fact, it is likely that such a

confrontation would have been detrimental to Brown's argument; C.M. would have been given an opportunity to explain any number of possible reasons why she was reluctant. In fact, C.M. testified that Brown had, at one point, threatened "Don't fight me, don't give me any trouble here. Otherwise, I am going to kill your mother." N.T., 11/30/2016, at 52. Asking C.M. about her initial reluctance carried significant risks and Brown does not identify any corresponding benefits. Accordingly, Brown has failed to show he was prejudiced by trial counsel's failure to cross-examine C.M. on her initial reluctance to file charges. No relief is warranted.

Brown's second issue involves C.B.'s testimony. During trial counsel's cross-examination of C.B., the following exchange occurred regarding C.B.'s relationship with Brown:

Q. Why weren't you getting along?

A. Why [weren't we] getting along? Do you want me to answer why [we weren't] getting along?

Q. I do.

A. Okay. We [were] not getting along because we stayed arguing and [Brown] has a history of physical abuse against me.

Q. Prior to 2012

A. For the whole marriage.

Q. Whole marriage.

N.T., 11/30/2019, at 106. Brown argues that trial counsel was ineffective for failing to request a curative instruction after eliciting this prior bad acts testimony.

While acknowledging that trial counsel had no reasonable basis for not requesting a curative instruction in this instance, the PCRA court nevertheless found Brown suffered no prejudice from the admission of this testimony. The court concluded that any error by trial counsel for not requesting a cautionary instruction does not entitle Brown to relief.

In explaining its decision to deny this issue, the trial court summarized the pertinent trial testimony as follows:

> [C.M.] testified that in May of 2012 [Brown] raped her. She lived with her mother ["C.B."], nine siblings and [Brown] in a house located in Yeadon, Delaware County, PA. At the time of the rape [C.B.] and [Brown] were "kind of a little separated" and [C.B.] was sleeping with C.M. and her younger sisters on the third floor of their home. On that night [Brown] came home from work close to midnight. C.M. was up late working on a high school project that was due the next day. She finished her work and as she headed upstairs to the third-floor bedroom [Brown] called her into the second-floor master bedroom that he had shared with C.B. He asked C.M. to get the television remote. C.M. complied and started to leave the room when [Brown] called her back. [Brown] told C.M. that she was pretty, like her mom was at the same age. [Brown] got behind C.M. He picked her up and put her on the bed, grabbed her by her wrists and held them tightly, pulled her pants down and put his penis in her vagina. C.M. could not sleep after the assault. She testified that eventually she fell asleep but woke up about three hours later and went to school.
>
> [Brown] was no longer in the home as of September 21, 2015. C.M. testified that she was embarrassed and ashamed of what had happened and that she did not tell her mother about the rape until about three years and seven months later after [Brown] moved from the house. She did not confide in anyone, including her

- 7 -

mother and best friend. During the intervening period she tried to avoid [Brown] and was never in a room alone with him again. She described the intervening years when she struggled with depression and at school. Her grades fell. She was angry and blamed her mother for putting her in a position where the assault could happen. She testified that she took pills and was hospitalized twice. She began "cutting" herself and did not graduate from high school. At the suggestion of friends she went to therapy. Her therapist was the first person that she confided in about the rape. Her therapist encouraged her to report the rape to her family when she was ready and eventually, in December of 2015 she followed that advice. About a month later she went to the police department and gave a statement. A forensic interview followed shortly thereafter in January of 2016.

Trial Court Opinion, 10/29/2019, at 8-9. The trial court noted that this case hinged on the credibility of C.M. *See id*. at 8. In concluding that Brown failed to satisfy the prejudice necessary to prevail on this ineffectiveness claim, the court explained

Trial counsel explored all of these areas that reflected on C.M.'s credibility. He knew that [Brown] had three jobs and worked an "insane" number of hours and "he was never there for them to have any sort of relationship difficulty." Trial counsel believed that C.M. did not "make a good impression at trial." He focused on the three-year seven month delay in reporting, the fact that C.M. continued to communicate with [Brown] during that period and that she did not reveal the rape to friends or family earlier. He highlighted the many inconsistencies and discrepancies that arose during the investigation and in C.M.'s testimony at the preliminary hearing and earlier trial. C.B. was not an eye witness to the rape. It was clear that her relationship with [Brown] had soured and that he was no longer considered a part of the family. Her statement was isolated and reflected on the relationship between herself and [Brown] and did not suggest that he was an abusive father to his children and step-father. Given all of the foregoing, Petitioner has failed to prove that "but for" C.B.'s brief and unexpected statement the outcome at trial would have been different.

*Id*. at 11.

- 8 -

In the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute *per se* ineffectiveness; "[r]ather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel." ***Commonwealth v. Buehl***, 658 A.2d 771, 778 (Pa. 1995).

Upon review of the record, we find support for the PCRA court's conclusion that Brown failed to demonstrate that he was prejudiced by trial counsel's failure to object or seek cautionary instructions

C.B. offered her statement that Brown had a history of physical abuse against her for the length of their marriage to explain why they were not getting along at the time C.M. reported the rape to C.B. C.B. did not assert that Brown had sexually abused her; nor did she testify that she had witnessed Brown abuse C.M. As the PCRA court noted, the Commonwealth's only direct evidence of Brown's guilt came from C.M.'s testimony. Brown has not established that the jury would have found C.M.'s testimony not credible in the absence of C.B.'s assertion of abuse at the hands of Brown. Therefore, Brown fails to satisfy the prejudice necessary to prevail on an ineffectiveness claim. Accordingly, the PCRA court properly denied relief on this basis.

Brown's third, and final, issue focuses on trial counsel's failure to request a mistrial after the Commonwealth's closing argument to the jury. Specifically,

Brown challenges the following portion of the prosecutor's closing argument regarding stipulated character testimony:

> We stipulated to character. Now had the character witness come in I wouldn't have asked him any questions. I would never ask questions of a character witness. As far as I am concerned they are victims in a different way than [C.M.] … They have been duped just like everyone else, just like he is trying to dupe you. We know that men of seemingly great character commit these crimes. These crimes happen to our most prominent figures, they happen in our most sacred institutions. Men of great character do horrible things behind closed doors, we know this, your common sense tells you that.

N.T., 12/1/2016, at 56-57. Brown's counsel eventually asked for a sidebar to discuss the remark, but no official objection was lodged. In response, the court included in its charge to the jury a standard character instruction.

To establish that trial counsel was ineffective for failing to request a mistrial, Brown must first establish that the prosecutor actually committed misconduct. If the prosecutor did not, Brown cannot establish that his claim has arguable merit.

For the statements identified by Brown to constitute prosecutorial misconduct, he must establish that they were more than exuberant advocacy or a biased recitation of the evidence:

> It is well established that a prosecutor is permitted to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence.
>
>> In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error

- 10 -

unless their unavoidable effect ... [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Further, the allegedly improper remarks must be viewed in the context of the closing argument as a whole.

***Commonwealth v. Luster***, 71 A.3d 1029, 1048 (Pa. Super. 2013) (internal citations and quotation marks omitted).

We agree with the trial court that the prosecutor's discussion of character and reputation testimony was permissible argument. "The Commonwealth [is] permitted to ask the jury to consider the source of that character testimony in assessing the witnesses' credibility and the weight to be given to their testimony." **Commonwealth v. *Gibson***, 688 A.2d 1152, 1165 (Pa. 1997) (citation omitted).

The prosecutor's remarks addressed the impact and quality of Brown's character testimony. The highlighted statement merely pointed out that crimes of this nature take place in secret, so although the witnesses may speak to the appellant's seemingly unassailable character in the community, they would be unaware of an appellant's behavior in private. The prosecutor properly pointed out the inherent limits of reputation evidence: people with admittedly outstanding reputations may nevertheless act inconsistently with that reputation. Moreover, the district attorney did not impugn Brown's character, but simply encouraged the jury to view reputation evidence from people who know him outside of his private life with a critical eye. Therefore,

such remarks were not improper and did not constitute prosecutorial misconduct.

On this record, we must conclude that the impact of the highlighted passage on the jury was not so prejudicial as to require trial counsel to request, nor the trial court to grant, a mistrial. The PCRA court did not err in finding that the prosecutor's remarks were a permissible comment on the credibility and the weight of the character evidence. ***See Commonwealth v. Van Cliff***, 397 A.2d 1173, 1178 (Pa. 1979) (finding "[t]he jury merely was encouraged to view appellant's character testimony with a critical eye rather than to conclude that appellant's character was necessarily bad"). Brown is due no relief on his third claim.

As none of Brown's issues on appeal warrant relief, we affirm the order dismissing Brown's PCRA petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20