J-S12010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ULYSSES RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1226 EDA 2020 |

Appeal from the PCRA Order Entered May 18, 2020
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000679-2014

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                     Filed: May 13, 2021

Ulysses Rodriguez appeals from the order, entered in the Court of Common Pleas of Lehigh County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After our review, we affirm.

On August 21, 2015, Rodriguez was convicted by a jury of voluntary manslaughter after he shot a man who had declined to purchase marijuana from him on the streets of Bethlehem, Lehigh County.  On January 15, 2016, the Honorable James T. Anthony sentenced Rodriguez to an aggravated-range sentence of 10 to 20 years' incarceration.  Rodriguez's post-sentence motions were denied.  This Court affirmed his judgment of sentence, **see Commonwealth v. Rodriguez**, 2163 EDA 2016 (Pa. Super. filed Oct. 18, 2017) (unpublished memorandum decision), and the Supreme Court denied

allowance of appeal. *See Commonwealth v. Rodriguez*, 190 A.3d 581 (Pa. 2018) (Table).

On May 14, 2019, Rodriguez filed a *pro se* PCRA petition alleging ineffectiveness of trial counsel, Philip Lauer, Esquire. The PCRA court appointed counsel, who filed two amended petitions. The court held a hearing on December 19, 2019, at which Rodriguez and Attorney Lauer testified. Following the submission of briefs by the parties, the PCRA court denied relief by order dated May 18, 2020. Rodriguez filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Rodriguez raises the following issue for our review:

> Whether the [PCRA] court erred in denying [Rodriguez's] request for post-conviction relief when [Rodriguez] was rendered ineffective assistance of counsel . . . in the investigation, presentation, and/or the arguing of [Rodriguez's] mental illness as a mitigating factor as to [Rodriguez's] criminal responsibility for the killing or [a]s a mitigating factor in sentencing?[1]

Brief of Appellant, at 7.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Hanible*,

---

[1] The argument portion of Rodriguez's brief only discusses counsel's alleged failure to properly argue Rodriguez's mental health issues as a mitigating factor at sentencing. Thus, to the extent that Rodriguez purports to challenge counsel's stewardship at trial, he has waived that claim for failure to develop it in his brief. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (where appellate brief fails to develop issue in any meaningful fashion capable of review, defendant waives claim).

30 A.3d 426, 438 (Pa. 2011). We view the findings of the PCRA court and the evidence of record in a light most favorable to the Commonwealth as prevailing party. *Id.* "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013).

To be entitled to PCRA relief, a petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, any one of which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. §§ 9543(a)(2)(i) and (ii). Counsel is presumed effective, and in order to overcome that presumption, a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. **Commonwealth v. Fletcher**, 986 A.2d 759, 772 (Pa. 2009); **Commonwealth v. Natividad**, 938 A.2d 310, 321 (Pa. 2007). "With regard to 'reasonable basis,' the PCRA court 'does not question whether there were other[,] more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any

reasonable basis.'" ***Commonwealth v. Bardo***, 105 A.3d 678, 684 (Pa. 2014), citing ***Roney***, 79 A.3d at 604. "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Commonwealth v. Spotz***, 84 A.3d 294, 311–12 (Pa. 2014) (citation, quotation marks, and brackets omitted). To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. ***See Strickland v. Washington***, 466 U.S. 668, 694 (1984); ***Commonwealth v. Tedford***, 960 A.2d 1, 12 (Pa. 2008). Failure to establish any prong of the ***Strickland*** test will defeat an ineffectiveness claim. ***Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011).

Here, Rodriguez asserts that Attorney Lauer failed to "properly develop, investigate, present[,] or argue [his] mental health history and status in his case and especially as part of [his] sentencing presentation." Brief of Appellant, at 10. Rodriguez argues that the aggravating factors the court relied upon in sentencing him "were explainable based upon [his] mental illness and, in fact, the testimony derived from [defense] witness, Frank Dattilio, Ph.D, clearly showed that the mental illness was the likely cause" of many of those problems. ***Id.*** at 13. Rodriguez claims that counsel should have "properly developed" the testimony of Dr. Dattilio and "argue[d] these mitigating circumstances or follow[ed] up on how they clearly rebutted the

- 4 -

court's determination of the aggravating factors used to justify the maximum sentence." *Id.* at 14. Rodriguez further asserts that counsel should have pursued this issue more aggressively in his direct appellate claim challenging the discretionary aspects of his sentence. *Id.* at 14-15. He is entitled to no relief.

In anticipation of sentencing, Attorney Lauer retained Dr. Dattilio to evaluate Rodriguez and submit a report of his findings; he ultimately met with Rodriguez twice and authored a 15-page report. Prior to the sentencing hearing, Attorney Lauer provided the court with a copy of Dr. Dattilio's report, which the court reviewed. Doctor Dattilio also testified on Rodriguez's behalf at sentencing. He stated that he reviewed numerous documents related to Rodriguez's history, including the pre-sentence investigation report ("PSI") and trial transcript, and interviewed various family members including Rodriguez's mother. N.T. Sentencing Hearing, 1/15/16, at 9-10. He also interviewed Rodriguez twice, at which time he gleaned insight into Rodriguez's upbringing and family background. *Id.* at 11. Specifically, Dr. Dattilio testified that, as a child, Rodriguez had been subject to "sadistic . . . punishment" by his mother's paramour, who was also physically abusive to Rodriguez's mother. *Id.* Doctor Dattilio indicated that Rodriguez's upbringing had "hardened him . . . emotionally" and that he had not received much love or affection. *Id.* at 12. As a result, Rodriguez "turned toward himself" and developed a narcissistic personality. *Id.* Doctor Dattilio described Rodriguez as "avoiding showing any weakness to anyone" and possessing a "bravado

that . . . eventually created a lot of trouble for him." *Id.* at 12-13. Doctor Dattilio found that Rodriguez's ability to read situations is poor and that he suffers from paranoia and hypervigilance. *Id.* at 13. Doctor Dattilio testified that he administered a battery of psychodiagnostic tests to Rodriguez and determined that he sufferers from narcissistic personality disorder with anti-social features, generalized anxiety disorder, and "a fair amount of paranoia." *Id.* at 16-17. He concluded that Rodriguez's tendency to "misread and misinterpret the actions of others" led to his commission of the underlying homicide. *Id.* at 17. However, Dr. Dattilio also concluded that Rodriguez is not "hardened to the core" and that he is capable of experiencing remorse and guilt. *Id.* at 18.

At sentencing, Attorney Lauer argued vigorously on his client's behalf and emphasized the significance of Dr. Dattilio's testimony in explaining Rodriguez's actions:

> [W]e offered Dr. Dattilio for two reasons. Everyone has commented on this man's apparent lack of remorse and I am suggesting to you, Judge, that there is an explanation for that and Dr. Dattilio provided it. Another part of his testimony relates to what kind of thought process he [has] and frankly, what kind of failed thought process he might have [had] at the time that these events actually occurred.
>
> . . .
>
> The defendant has incurred numerous prison misconducts, yes, he has[,] and I'm asking you to remember Dr. Dattilio in that regard and I would like to address that personally in a moment. [It has been said that t]he defendant shows no remorse. I guess I agree that he shows no remorse, but this is somebody that I've met with twenty[-]some times[,] more than that probably. And

yeah, the first two or three times you don't see the real Ulysses. I've seen it. I've sat with him. I've looked at the tears flowing. This is not somebody who doesn't care. This is somebody who cares a lot. He is bright as a whip, Judge. Throughout this encounter of [mine] with him, he had more questions, more infuriating need[-]to[-]know[-]things than anybody I've ever encountered as a lawyer and yet, as it went on[,] I realized it's somebody who just needs to know, needs to know what is going on. He stands up for himself. I think he would tell you that of my—God knows how many visits, at least ten of them started out with he and I yelling at each other because it's hard to get past that seemingly, placid, kind of stare[-]you[-]in[-]the[-]eye[-]and[-]look[-]you[-]down kind of a thing, but that's not him. I understand that's what he appears to be, but I am asking you to listen to what [Dr.] Dattilio had to say and frankly listen to what I have to say in that regard.

. . .

[It]'s an awful case, it's a sad case. It's sad for everybody, but I will represent to this [c]ourt that as much as you heard about all of his bad points[—]sitting, staring, looking, not showing remorse, never hung his head[—]well, he doesn't hang his head. That's the kind of person he is. This is not an evil man. . . . I have spent time with [Rodriguez]. One of the things we ended up talking about on the way up here today was that somehow, as crazy as it sounds in a case like this, we both like him. He's a decent person. He is a little bit on edge, I agree and that needs to be treated. He needs to be punished. Society needs to punish him, but I think it needs to punish him within those guidelines, taking into consideration not just the horrific fact that somebody is dead, but some of the things about this young man and what you learned about him, his mother, his family, his abusive step-father and all of the rest of him. He's come from a tough place.

*Id.* at 79-80, 81-82, 88-89.

In addition to the testimony and 15-page report of Dr. Dattilio, the zealous argument of Attorney Lauer, and testimony and letters from Rodriguez and his family and supporters, the court was also in possession of a PSI. Accordingly, the sentencing court was aware of all relevant information

regarding Rodriguez's mental health issues, difficult upbringing, and other mitigating circumstances. *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (where court is in possession of PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors"). Nevertheless, the sentencing court was required to weigh those mitigating circumstances against the protection of the public, the gravity of the offense in relation to the victim and the community, and Rodriguez's rehabilitative needs. *See* 42 Pa.C.S.A. § 9721(b). Moreover, an aggravated-range sentence is justified to the extent that the individual circumstances of the case are atypical of the crime for which the appellant was convicted, such that a more severe punishment is appropriate. *Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa. Super. 2006). The court explained its sentencing decision and the atypical nature of Rodriguez's crime, as compared to other instances of voluntary manslaughter, as follows:

> [THE COURT:] So, possession of an illegal firearm which he used in the crime and carried during his drug dealing activities. The defendant's flight and concealment after the crime. We heard testimony about that. Endangerment of others during the crime. There were how many shots fired?
>
> MR. JENKINS: Four.
>
> THE COURT: Four. The decision to kill formed over a relatively lengthy time horizon and [was] not a split second decision. . . . [T]he more egregious nature of this crime when compared to the

typical voluntary manslaughter.[2]  And I think what you are talking about [in a typical voluntary manslaughter case] is an excessive force and defense of others where the person is not engaged in illegal activity and otherwise didn't initiate the confrontation. . . .  [A]nd the defendant shows no remorse.

N.T. Sentencing Hearing, 1/15/16, at 105-06.

Based on all of the foregoing, Rodriguez has failed to establish that further development of his mental health issues and difficult life circumstances would have led the court to impose a lesser sentence, or led this Court to conclude on direct appeal that the trial court abused its sentencing discretion. Because he cannot establish that his underlying sentencing claim has merit, his ineffectiveness claim must fail.  **Fletcher**, **supra**.  Accordingly, the PCRA court did not err in denying him PCRA relief.

Order affirmed.

_____

2 Notably, the sentencing court commended Attorney Lauer's performance at trial:

> [THE COURT:]  Your attorney did an excellent job.  I mean, this could have been a third[-]degree or even a first[-]degree murder conviction.  I think that the jury[—]I said from very early on[,] it's either going to be voluntary manslaughter or third degree[—]and your attorney was able to convince them of voluntary manslaughter[,] and so you certainly shouldn't have any issues with your attorney even though the sentence I gave you is in the aggravated range.

N.T. Sentencing Hearing, 1/15/16, at 108-09.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/21